Nivia VIERA, Plaintiff,

v.

OLSTEN/KIMBERLY QUALITY CARE, Joe Mann, Assistant Comptroller of Olsten/Kimberly Quality Care, and Tom Boelson, Chief Financial Officer of Olsten/Kimberly Quality Care, Defendants.

No. 95 Civ. 2827 (JES).

United States District Court, S.D. New York.

Sept. 7, 1999.

Lee Nuwesra, New York City, for plaintiff.

Kelley Drye & Warren LLP, New York City, Kenneth Kirschner, John E. Kiley, of counsel, for defendants.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Plaintiff Nivia Viera, a former employee of Olsten/Kimberly Quality Care ("Olsten/KQC"), brings the instant employment discrimination action under Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e *et seq.* ("Title VII") and Article 15 of the New York State Human Rights Law, § 296(a) and (e) ("NYHRL"). Plaintiff alleges that defendants took various adverse actions against her and ultimately forced her to resign after she disclosed to defendants Joseph Mann ("Mann"), Assistant Controller of Olsten/KQC's Finance Department, and

Tom Boelsen ("Boelsen"), Senior Vice President and Chief Financial Officer of Olsten/KQC, that she was pregnant. Plaintiff claims that defendants discriminated against her on the basis of her gender, pregnancy, race, national origin, and status as an unmarried person, subjecting her to a hostile environment and ultimately discharging her from employment. Pursuant to Rule 56, Fed.R.Civ.P., defendant Olsten/KQC moves for partial summary judgment against plaintiff on plaintiff's claims of discriminatory discharge, arguing *inter alia* that plaintiff voluntarily resigned her position and thus cannot bring any claim based upon the termination of her employment. The individual defendants Mann and Boelsen move to dismiss for failure to state a claim pursuant to Rule 12(b)(6), Fed.R.Civ.P., arguing that individual supervisors may not be liable under Title VII. For the reasons that follow, the Court grants defendants' motions.

### BACKGROUND

Plaintiff, a single Hispanic female, was hired by Olsten Corporation as Manager of Infusion Reimbursement on June 8, 1992. *See* Complaint, dated April 14, 1995 ("Compl."), ¶¶ 9, 10, 14. Plaintiff's position entailed developing and implementing billing and collecting procedures for the infusion therapy program. *See* Affidavit of Kenneth Kirschner, dated September 4, 1996 ("Kirschner Aff."), Exh. C. From June 1992 until October 1993, plaintiff reported to Mary Wehrberger, Director of Infusion Reimbursement. *See id.*, Exh. A, Deposition of Nivia Viera ("Viera Dep.") 146–147, 152.

In July 1993 Olsten Corporation acquired Kimberly QualityCare ("KQC"), and the operations of Olsten Health Care and KQC were merged, forming a new entity known as Olsten/Kimberly Quality Care ("Olsten/KQC"). *See* Affidavit of Thomas Boelsen, dated August 30, 1996 ("Boelsen Aff."), ¶ 3. As a result, Olsten's infusion therapy program disbanded beginning in October 1993, and all four members of Olsten's infusion therapy group were either transferred or discharged. *See* Viera Dep. 152; Boelsen Aff. ¶ 6. Plaintiff was transferred to the finance department of the clinical specialties sector, where Mann was her new supervisor. *See* Boelsen Aff. ¶ 7.

From November 1993 until her termination in May 1994, plaintiff continued to perform substantially the same duties that she had performed in the infusion therapy program; the only difference in plaintiff's activities was that the scope of her duties expanded to include billing and collection procedures for pediatrics and rehabilitation in addition to infusion therapy. *See id.*; Viera Dep. 165. The parties dispute what job title plaintiff held during this time. Plaintiff claims that she was promoted to the position of Director of Reimbursement for Specialty Programs ("DRSP"). A November 1993 business plan prepared by Vice–President Gary Cellini called for the appointment of a DRSP for the infusion therapy program. *See* Viera Dep. 166. However, Cellini's plan did not specifically mention plaintiff, and in any event the plan was not adopted by Olsten/KQC. *See* Boelsen Aff. ¶ 8. In addition, the Human Resources Department never formally authorized plaintiff's alleged promotion to this position, and none of plaintiff's superiors ever officially informed her that she had received a promotion. *See* Viera Dep. 173, 369. Nonetheless, because Mann approved plaintiff's request to order business cards bearing the title DRSP and other employees addressed her at staff meetings as DRSP, plaintiff contends that this was her new job title. *See id.* at 374.

Plaintiff revealed to Mann and Boelsen that she was pregnant in early December 1993, when she requested a day off to have an amniocentesis performed. *See id.* at 507. Plaintiff alleges that her work environment then "began to change for the worse." *See* Compl. ¶ 15. Plaintiff alleges that she was excluded from trips, projects,

departmental outings, dinners, and the office Christmas gift exchanges and was ignored by Mann and Boelsen. *See id.* at ¶ 57. In addition, she claims that Mann repeatedly stared at her pregnant abdomen. *See* Viera Dep. 464. Further, in January 1994, Mann once overheard her speaking with her mother in Spanish, at which time he blushed and stated that he had not known that she was Hispanic. *See id.* at 443, 445.

In January 1994, plaintiff called Pat Muncy in the Human Resources Department to express concern regarding Mann's failure to return her calls and his alleged attempts to exclude her from meetings because of her pregnancy. *See id.* at 448. In February 1994, Viera met with Muncy, who instructed plaintiff to express her concerns to Boelsen. *See id.* at 450. Plaintiff did not do so, however. *See id.* at 451.

As early as November 1993, plaintiff was aware that Mann would be ultimately responsible for designing a new job description for her as part of the process of integrating the operations of Olsten and KQC. *See id.* at 339. When Mann presented plaintiff with her new job description in April 1994, the job description did not include the duties of the DSRP. Instead, plaintiff's new title was to be Clinical Specialties Analyst ("CSA"). *See id.* at 304. When Mann presented plaintiff with her new job description, he told plaintiff that she did not fit into the Finance Department's "anal retentive management style". *See id.* at 305–308. Plaintiff, dissatisfied with what she viewed as a demotion, approached Al Perry, the new Vice President for Specialty Programs, and expressed her interest in continuing to serve as DRSP. *See id.* at 333, 335. Perry responded that plaintiff could submit her resume to apply for the position. *See id.* He then asked her how long she planned to be absent on maternity leave. *See id.*

The parties dispute whether plaintiff's new position as CSA was a demotion. Although the new position ordinarily carried a lower pay grade, plaintiff's salary, benefits, hours, and eligibility for salary increases would have remained the same. *See* Compl. ¶ 26; Viera Dep. 348, 570, 573, 698. Plaintiff considered the new position a demotion because it called for less strategic planning and less public visibility than her previous position. *See id.* at 311–13. However, of the seven tasks that plaintiff was to perform as CSA, three had been taken directly from plaintiff's own proposed job description, and the other four were slightly more analytical and financial variations of tasks proposed by plaintiff. *See id.* at 333, 348; Kirschner Aff., Exh. H, I.

As of May 1994, plaintiff had not informed Mann whether she would accept the CSA position. *See* Viera Dep. 344. On May 10, 1994, plaintiff's attorney, Lee Nuwesra, Esq., told Nancy Lanis, Esq., Vice President and Assistant General Counsel of Olsten/KQC, that plaintiff had decided not to accept the CSA position. *See* Kirschner Aff., Exh. J. The following day, Lanis sent a letter to Nuwesra stating that the CSA position would remain available for another two days and reiterating that plaintiff's compensation would not change. *See* Viera Dep. 570, 573. Nuwesra responded by letter on May 18, 1994, indicating that plaintiff no longer felt comfortable working in the office. *See* Kirschner Aff., Exh. J. On May 23, Lanis faxed a letter to plaintiff informing her that if she failed to report to Mann in the CSA position by May 24, she would be deemed to have voluntarily resigned. *See* Plaintiff's Reply Affirmation in Opposition to Defendants' Motion to Dismiss and/or for Partial Summary Judgment ("Pl.Aff."), Exh. F. Nuwesra responded by letter on the same day, alleging that Olsten/KQC discriminated against plaintiff based on sex, marital status, race, national origin, and disability. *See id.* Despite plaintiff's failure to report to Mann on May 24, Lanis informed Nuwesra and plaintiff by letter dated May 26 that the position was still available and that plaintiff's salary and eligibility for merit increases would not

change upon acceptance of her new position. *See* Pl.Aff., Exh. G. Finally, at a May 31 meeting between Mann and plaintiff, plaintiff again rejected the CSA position. *See* Pl.Aff., Exh. H. Accordingly, Olsten/KQC treated plaintiff's decision as a voluntary resignation. *See id.*

On April 24, 1995, plaintiff commenced the instant action against defendants, alleging discrimination based on race, gender, pregnancy, national origin, and marital status under state and federal law. Plaintiff's complaint pleads claims for hostile work environment and discriminatory discharge. Subsequently, on September 4, 1996, Mann and Boelsen moved to dismiss plaintiff's Title VII claims against them, and Olsten/KQC moved for partial summary judgment.

Olsten/KQC argues that plaintiff voluntarily resigned from her position of employment and therefore cannot bring any claim arising from her alleged discharge. Olsten/KQC further argues that plaintiff is not entitled to back pay or front pay because she did not mitigate her damages by seeking employment although such employment was available to her. Mann and Boelsen argue that plaintiff's Title VII claims against them must be dismissed because supervisors cannot be liable as employers under federal law.

Viera responds by arguing that she did not voluntarily resign but was constructively discharged from employment. She also argues that she is entitled to back pay and front pay. She does, however, concede that Mann and Boelsen are not properly named as defendants under Title VII.

### DISCUSSION

***Plaintiff's Claim of Discriminatory Discharge by Olsten/Kimberly***

A court may grant summary judgment only if it determines that there are no genuine issues of material fact based on a

review of the pleadings, depositions, answers to interrogatories, admissions on file and affidavits. *See* Fed.R.Civ.P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

When ruling on a summary judgment motion, a court must construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no genuine issue as to any material fact exists, the moving party is entitled to summary judgment as a matter of law. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

■ To prevail on a claim of discrimination under Title VII,[1] the plaintiff first bears the burden of establishing a *prima facie* case. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). This burden, however, is a light one. *See Chertkova v. Connecticut General Life Ins. Co.,* 92 F.3d 81, 87 (2d Cir.1996). A plaintiff establishes a *prima facie* case by showing (1) that she is a member of a protected class; (2) that she was qualified for the position she held; (3) that there was an adverse employment action taken against her; and (4) that the position remained open and the employer continued to seek similarly-qualified applicants. *See McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. 1817. A plaintiff who establishes a *prima facie* case has set forth sufficient facts upon which a finding of discrimination by the employer can be predicated. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct.

---

1. The analysis for discrimination claims under the NYHRL is the same as that under Title VII. *See Tyler v. Bethlehem Steel Corp.,* 958 F.2d 1176, 1180 (2d Cir.1992); *Leslie v. BancTec Service Corp.,* 928 F.Supp. 341, 349 (S.D.N.Y.1996).

1089, 67 L.Ed.2d 207 (1981). In addressing these elements in a motion for summary judgment, the court is to determine whether there are any issues to be tried. *See Spence v. Maryland Cas. Co.*, 995 F.2d 1147, 1155 (2d Cir.1993). The court is not to weigh the evidence. *See id.*

The burden then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089 (quoting *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817). If the defendant carries this burden, then the plaintiff must prove that the action taken against him was the result of unlawful discrimination. *See id.* Plaintiff may do so by establishing by a preponderance of the evidence that the legitimate reason offered by the defendant is merely a pretext for the employer's actual discriminatory reasons for terminating the plaintiff's employment. *See id.* If plaintiff fails to make out a *prima facie* case initially, there is no need for defendant to articulate a nondiscriminatory reason. *See Spence*, 995 F.2d at 1156.

 Inasmuch as plaintiff does not raise a genuine issue of material fact with respect to an actual or constructive discharge, she fails to establish a *prima facie* case of discriminatory discharge. An employee is actually discharged when "the employer uses language or engages in conduct that would logically lead a prudent person to believe his tenure has been terminated." *Chertkova*, 92 F.3d at 88 (quoting *N.L.R.B. v. Trumbull Asphalt Co. of Del.*, 327 F.2d 841, 843 (8th Cir.1964)). Here, plaintiff was offered in the context of a corporate reorganization a new position that provided the same salary and benefits as she currently received. Further, she was aware that her failure to accept the position of CSA would be treated as a voluntary resignation. *See* Viera Dep. at 728. In light of the fact that defendants continuously reiterated that the CSA position remained available to her and waited nearly two months before they

compelled her to decide whether the accept the new position, a reasonable person in plaintiff's position could not possibly conclude that she was being discharged.

 An employee is constructively discharged when his employer "deliberately [makes] his working conditions so intolerable that he [is] forced into an involuntary resignation." *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 161 (2d Cir.1998), (*quoting Pena v. Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir.1983)). To prove constructive discharge, plaintiff must show that a reasonable person subjected to the working conditions experienced by plaintiff would have felt compelled to resign. *See Ternullo v. Reno*, 8 F.Supp.2d 186, 190 (N.D.N.Y.1998), (quoting *Pena*, 702 F.2d 322, 325). The employee's subjective assessment of working conditions as "intolerable" is insufficient, *see Neale v. Dillon*, 534 F.Supp. 1381, 1390 (E.D.N.Y.) *aff'd without op.*, 714 F.2d 116 (2d Cir.1982), and merely difficult or unpleasant working conditions do not rise to the level of constructive discharge. *See Martin v. Citibank, N.A.*, 762 F.2d 212, 221 (2d Cir. 1985).

Constructive discharge occurs only where an employee is subjected to an "unreasonable risk of physical harm, to significant verbal abuse, or is forced to accept significantly lower pay or inferior working conditions." *Ternullo*, 8 F.Supp.2d at 191. A change in job responsibilities with no decrease in pay or benefits does not reach the threshold required for a viable constructive discharge claim. *See Pena*, 702 F.2d at 326; *Stetson v. NYNEX Service Co.*, 995 F.2d 355, 360 (2d Cir.1993).

The action of the employer in this case is similar to that of the employer in *Pena v. Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir.1983). There, a nursing home administrator was told to delegate her daily supervisory responsibilities to her successor and to concentrate instead on governmental regulatory matters. *See id.* at 323. In granting defendant judgment notwith-

standing the verdict on plaintiff's discriminatory discharge claim, the Second Circuit emphasized that the employer wished to retain the plaintiff as an employee of the nursing home and did not seek to decrease her salary. *See id.* at 325.

In the case at bar, plaintiff's department was completely disbanded following the merger of Olsten Corporation and KQC. Although Olsten/KQC terminated one of the four members of plaintiff's former department, the company clearly sought to retain plaintiff as an employee and specifically directed Mann to create a new position for her offering her the same compensation and benefits. Although plaintiff did not like her new job description, her disappointment did not make her continued employment so intolerable that a reasonable person would have felt compelled to resign. Because plaintiff cannot establish a *prima facie* case for discriminatory discharge, her discharge claims under both Title VII and the NYHRL must be dismissed.[2]

### Plaintiff's Title VII Claims against Mann and Boelsen

The individual defendants Mann and Boelsen move to dismiss plaintiff's Title VII claims against them as supervisors who allegedly discriminated against her. A plaintiff's complaint may be dismissed pursuant to Rule 12(b)(6), Fed.R.Civ.P., only if no relief can be granted under the facts alleged. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). At the pleading stage of litigation, the court must accept plaintiff's factual allegations as true, *see Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

█ It is well established that individuals with supervisory control over a plaintiff

cannot be held personally liable for discrimination or retaliation under Title VII. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir.1995); *see also Ponticelli v. Zurich American Insurance Group*, 16 F.Supp.2d 414, 441 (S.D.N.Y.1998). Hence, even accepting as true the facts as alleged by plaintiff, only Olsten/KQC can be liable to plaintiff under Title VII, a point which plaintiff concedes. Plaintiff having offered no opposition to Mann and Boelsen's motion to dismiss the Title VII claims against them, the Court grants defendant's motion to dismiss these claims.

### CONCLUSION

For the reasons set forth above, the Court grants Olsten/KQC's motion for partial summary judgment and dismisses plaintiff's claims of discriminatory discharge and further grants Mann and Boelsen's motion to dismiss plaintiff's Title VII claims against them. All counsel shall appear before the Court for a Pre–Trial Conference on October 6, 1999, at 1:00 p.m. in Courtroom 705, 40 Centre Street, at which time the Court will schedule a Trial of plaintiff's remaining claims for hostile environment discrimination.

It is **SO ORDERED.**

---

**2.** Because the Court dismisses plaintiff's discriminatory discharge claims for failure to establish a *prima facie* case, the Court declines to address Olsten/KQC's argument that plaintiff is not entitled to recover back pay or front pay because of her failure to seek alternative full-time employment. As plaintiff's remaining claims arising from the various alleged adverse actions taken against her prior to her voluntary resignation as a matter of law cannot entitle her to back pay or front pay, plaintiff's alleged failure to mitigate her damages is a moot issue.