**Kenneth W. KEATING, Plaintiff,**

v.

**Robert J. GAFFNEY, County Executive of Suffolk County; Charles J. Bartha, Commissioner of the County of Suffolk Department of Public Works; the County of Suffolk; the Suffolk County Department of Public Works, and Henry Schneck, Defendants.**

No. 00CV5757(ADS)(ARL).

United States District Court,
E.D. New York.

Sept. 12, 2001.

Jaspan Schlesinger Hoffman LLP, Garden City, NY (Stanley A. Camhi, of Counsel), for the Plaintiff.

Robert J. Cimino, Suffolk County Attorney, Hauppauge, NY by Diane Leonardo Beckmann, Assistant County Attorney, for the Defendants.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

On September 2, 2000, Kenneth W. Keating ("Keating" or the "plaintiff") initiated this action against Robert J. Gaffney ("Gaffney"), the Suffolk County Executive; Charles J. Bartha ("Bartha"), the Commissioner of the Suffolk County Department of Public Works; the County of Suffolk; the Suffolk County Department of Public Works ("DPW"); and Henry Schneck ("Schneck") (collectively, the "defendants") by filing a complaint alleging a violation of his rights secured by the Americans With Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"), and the New York Human Rights Law, New York State Executive Law §§ 296, 297 ("NYHRL").

Presently before the Court is the defendants' motion to dismiss the plaintiff's complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.").

### I. BACKGROUND

The following factual allegations are taken from the plaintiff's complaint and are assumed to be true for the purposes of deciding defendants' motion. When Keating was approximately six years old, he began to experience episodic abdominal pain, vomiting, diarrhea, and headaches which lasted for several days at a time and which caused dehydration and weight loss. He also developed a poor tolerance to heat, breaking out in red blotches when he was exposed to the sun. His body also began sweating profusely, even when it was not overheated. Keating also suffered from serious bouts of mumps, pancreatitis, and encephalitis during his childhood.

Keating, who is now 37, consulted numerous doctors and was informed that his problems were due to the mumps, pancreatitis, and encephalitis from which he suffered as a child. Although doctors could control some of Keating's medical problems with medication, they were unable to control his intolerance to heat and his excessive perspiration. As a result, the plaintiff continues to suffer abnormal reactions when he is exposed to heat and the sun. Keating becomes dehydrated, hypoglycemic, and hyponatremic, which causes him to become weak, dizzy, nauseous, faint, and unable to carry on normal daily functions. He overheats quickly and sweats profusely, even when he is not overheated. Keating's doctors have advised him to avoid extended exposure to the heat and sun.

In 1998, Keating took the Suffolk County Civil Service Examination for a position as an Engineering Aide. The plaintiff received a high score, and the Suffolk County DPW asked him to come in for an interview.

Several officials at the DPW, including George Volkman ("Volkman"), the supervisor in charge of the DPW's Surveying Division, interviewed Keating in August 1998. During the interview, Keating told Volkman about his medical condition, explained that he was intolerant of heat, and said that he had to avoid extended exposure to the sun. Shortly thereafter, Volkman asked Keating to come in for a second interview, during which Volkman asked the plaintiff specific questions about his medical problems. Keating again explained his intolerance to heat and his need to avoid extended exposure to the sun. Volkman said that Keating's medical problems would not interfere with his ability to perform the duties of an Engineering Aide, but if necessary, the DPW would accommodate him.

On or about September 22, 1999, Keating was offered a position as an Engineering Aide with the DPW, which he accepted. He was assigned to work in Volkman's Surveying Division. As a new civil service employee, Keating was required to complete a six-month probationary period before he would be considered a permanent employee. He completed that probationary period on March 22, 1999, at which point he became a permanent employee.

For the next three months, the plaintiff continued to working in the Surveying Division, surveying various areas in Suffolk County. Keating worked outdoors but had access to shelter from the heat and sun. Keating's supervisors complimented the quality of his work.

On June 8, 1999, Keating was told that he was being reassigned from the Surveying Division to the DPW's Highway Construction Division where he would be acting as the County's representative at a highway construction site. The new position required the plaintiff to remain outside in the heat and sun in places where he did not have access to shelter. The plaintiff's job with the Highway Construction Division entailed measuring hot asphalt as it was being poured from a truck to ensure that the correct amount was being used. To accomplish this task, the plaintiff rode on the back of a truck and periodically placed a measuring rod into the hot asphalt as it was being poured. According to the complaint, hot asphalt generates temperatures in excess of 300 degrees. The defendants assigned the plaintiff to the highway construction job despite their knowledge of Keating's heat intolerance, profuse sweating, and need to remain protected from the sun.

The plaintiff reported to work as instructed. The complaint alleges that in June 1999, Suffolk County, and much of the New York Metropolitan area, experienced a heat wave. Keating spent several hours at work before the sun, the heat of the day, and the hot asphalt caused him to become violently ill, dizzy, nauseous, and disoriented. Keating's physical condition caused him to stumble into the path of oncoming traffic, and he narrowly missed being hit by a car.

Keating found it impossible to continue working at this job site. He contacted the DPW and informed them that his medical condition, combined with the effects of the sun and the heat, had caused him to become ill. He asked the DPW to send someone to replace him. Schneck, the supervisor of the Highway Construction Division, advised Keating that no one would be sent to replace him, and that if he left the construction site, he would be fired. Keating felt that given his physical condi-

tion, he had no alternative but to leave the site and seek medical attention.

The plaintiff reported to work again on June 10, 1999. Keating informed Schneck that he suffered from heat intolerance and could not be exposed to heat or sun for extended periods of time. The plaintiff requested "a reasonable accommodation" based on his physical condition. Schneck ignored Keating's request and directed him to return to the construction site. Keating complied and continued to suffer from the effects of the heat, sun, and hot asphalt.

Keating met with Schneck over the next several days. During those meetings, Keating requested "a reasonable accommodation" based on his physical condition. In particular, Keating asked to be transferred back to the Surveying Division where he had worked without becoming ill. Volkman allegedly told Schneck that he had a vacancy, and that Keating could return to the Surveying Division. Schneck rejected Volkman's proposal, refused to allow Keating to be reassigned, and told Keating, "[Y]ou are in my [expletive deleted] world now." Schneck continued to send Keating to the construction site.

On June 28, 1999, Keating resigned his position and ceased working for the defendants. The plaintiff alleges that his resignation constitutes a constructive discharge by the defendants.

The plaintiff claims that he filed a timely complaint of employment discrimination based upon his disability with the Equal Employment Opportunity Commission ("EEOC"). Keating further states that on August 29, 2000, he requested a "right to sue" letter, which was still being processed at the time he filed the complaint in this case.

Keating claims that he served a timely notice of claim upon Suffolk County on or about February 12, 2000. The plaintiff was examined pursuant to General Munici-

pal Law ("GML") § 50h on May 18, 2000. On September 21, 2000, the plaintiff discontinued his complaint with the State Division of Human Rights for the purpose of commencing a judicial proceeding.

Keating's first claim alleges that the defendants violated the ADA by (a) refusing to grant him a reasonable accommodation based on his disability as required by law; and (b) constructively discharging him on the basis of his disability. Keating argues that he is disabled within the meaning of the ADA by virtue of his intolerance to heat.

As a second claim, Keating alleges that all of the defendants violated his rights under the NYHRL by refusing to provide him with a reasonable accommodation for his disability and constructively discharging him based on his disability. As a third claim, the plaintiff alleges that Schneck is personally liable for the plaintiff's injuries because he aided and abetted the defendants' unlawful discriminatory practices in violation of the NYHRL.

Keating's fourth claim alleges that all of the defendants unlawfully retaliated against him because he requested a reasonable accommodation for his disability. In particular, Keating contends that Schneck attempted to fire him, harassed him, and subjected him to conditions that were harmful to his health in retaliation for Keating's reasonable accommodation request. Keating further asserts that Schneck embarked upon this course of conduct in order to force Keating to resign "since he was unable to fire him outright for requesting a reasonable accommodation due to his disability."

For their part, the defendants argue that Keating is not disabled within the meaning of either the ADA or the NYHRL. The defendants also contend that Keating failed to serve a timely notice of claim and failed to allege a prima facie

case of retaliation under the ADA and the NYHRL.

## II. DISCUSSION

### A. Rule 12(b)(6) Standard

On a motion to dismiss for failure to state a claim, the Court should dismiss the complaint pursuant to Rule 12(b)(6) only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Tarshis v. Riese Organization,* 211 F.3d 30, 34 (2d Cir.2000) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *see Gregory v. Daly,* 243 F.3d 687, 690 (2d Cir.2001). Further, the district court "must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." *Tarshis,* 211 F.3d at 30; *see Gregory,* 243 F.3d at 691. The Court is mindful that its function is not to weigh the evidence that might be presented at trial, but merely to determine whether the complaint is legally sufficient. *See Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985); *Okwedy v. Molinari,* 150 F.Supp.2d 508, 512 (E.D.N.Y.2001). The Court also acknowledges "the care exercised in this Circuit to avoid hastily dismissing complaints of civil rights violations." *Gregory,* 243 F.3d at 691; *see Tarshis,* 211 F.3d at 35 ("This rule barring the granting of a motion to dismiss has for many years been carefully adhered to in this Circuit, particularly in civil rights actions."); *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995).

When making its determination, a district court must consider "not only the assertions made within the four corners of the complaint itself, but also those contained in documents attached to the pleadings or in documents incorporated by reference." *Gregory,* 243 F.3d at 690; *see* *Austin v. Ford Models, Inc.,* 149 F.3d 148, 152 (2d Cir.1998). In addition, the Court may consider documents that are in the plaintiff's possession or that the plaintiff knew of and relied on in bringing suit. *See Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir.1993); *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47–48 (2d Cir.1991); *Skeete v. IVF America, Inc.,* 972 F.Supp. 206, 208 (S.D.N.Y.1997).

### B. The Americans With Disabilities Act

The ADA prohibits an employer from discriminating against an employee "because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A plaintiff alleging employment discrimination under the ADA bears the initial burden of establishing a prima facie case. *Ryan v. Grae & Rybicki, P.C.,* 135 F.3d 867, 869 (2d Cir.1998) (citing *Wernick v. Federal Reserve Bank of N.Y.,* 91 F.3d 379, 383 (2d Cir.1996)). In order to establish a prima facie case of discriminatory discharge, a plaintiff must show that: (1) his employer is subject to the ADA; (2) he suffers from a disability within the meaning of the ADA; (3) he could perform the essential functions of his job with or without reasonable accommodation; and (4) he was discharged because of his disability. *See Ryan v. Grae & Rybicki, P.C.,* 135 F.3d 867, 869–70 (2d Cir. 1998).

In addition, a plaintiff can state a claim for discrimination based upon his employer's failure to accommodate his disability by alleging facts showing that (1) his employer is subject to the ADA; (2) he is an individual with a disability within the

meaning of the ADA; (3) with or without reasonable accommodation, he could perform the essential functions of the job; and (4) the employer had notice of the plaintiff's disability and failed to provide such accommodation. *See Lyons v. Legal Aid Society*, 68 F.3d 1512, 1515 (2d Cir. 1995).

Under either theory—constructive discharge or failure to make a reasonable accommodation—the sole dispute before this Court is whether Keating is disabled within the meaning of the ADA. The ADA defines a "disability" as either:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). Keating claims that he is disabled under all of these alternative theories, and the Court will consider each of them in turn.

## 1. Impairments that Substantially Limit Major Life Activities

### (a) *Impairment*

■ First, the Court must determine whether the plaintiff has alleged a physical or mental impairment. *See Bragdon v. Abbott*, 524 U.S. 624, 631, 118 S.Ct. 2196, 2202, 141 L.Ed.2d 540 (1998). The EEOC has issued regulations implementing the ADA that define an "impairment" to include any "physiological disorder, or condition" that affects *inter alia* the neurological, musculoskeletal, cardiovascular, respiratory, reproductive, digestive, and endocrine systems or the special sense organs. 29 C.F.R. § 1630.2(h)(1). Keating's intolerance to heat causes him to develop a blotchy rash and sweat profusely, and to become dehydrated, hypoglycemic, hyponatremic, weak, dizzy, nauseous, and faint. Thus, Keating's condition of heat intoler-

ance affects his cardiovascular system. As such, Keating has an "impairment" as that term is defined in the ADA.

### (b) *Major Life Activities*

■ The second step in the analysis is to identify the life activities affected by the impairment and to determine whether they are "major life activities" under the ADA. *See Bragdon*, 118 S.Ct. at 2202. "The term '[major life activity],' by its ordinary and natural meaning, directs [the Court] to distinguish between life activities of greater and lesser significance." *Reeves v. Johnson Controls World Services, Inc.*, 140 F.3d 144, 151 (2d Cir.1998). The EEOC has provided that "major life activities" include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). This list is illustrative, not exhaustive. *See Bragdon*, 118 S.Ct. at 2205. The Second Circuit has identified other "major life activities," including, but not limited to "sitting, standing, lifting, or reaching." *Colwell v. Suffolk County Police Dept.*, 158 F.3d 635, 641 (2d Cir.1998) (quoting *Ryan*, 135 F.3d at 870). Keating claims that his intolerance to heat substantially limits his ability to work. As noted, working is a major life activity. *See* 29 C.F.R. § 1630.2(i); *Colwell*, 158 F.3d at 642. Therefore, Keating has satisfied the second element of a "disability."

### (c) *Substantial Limitation*

■ The third step in the analysis is to determine whether the plaintiff's impairment "substantially limits" the life activity that has been deemed major. *Bragdon*, 118 S.Ct. at 2206. This inquiry is individualized and fact-specific. *Colwell*, 158 F.3d at 643; *Reeves*, 140 F.3d at 152 ("The determination of whether an individual is disabled under the ADA is made on an

individualized case-by-case basis."); *Ryan*, 135 F.3d at 872 ("[T]he determination whether an impairment 'substantially limits' a major life activity is fact specific."). The EEOC regulations explain that in evaluating the major life activity of working, "[t]he term *substantially limits* means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes." 29 C.F.R. § 1630.2(j)(3)(i). "If the plaintiff establishes only 'the inability to perform a single, particular job,' he has failed to establish a substantial impairment to his major life activity of working." *Muller v. Costello*, 187 F.3d 298, 312 (2d Cir.1999) (quoting 29 C.F.R. § 1630.2(j)(3)(i)).

In evaluating whether an individual's major life activity of working is substantially impaired, the Second Circuit has instructed courts to consider the following factors:

(A) The geographical area to which the individual has reasonable access;

(B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or

(C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

*Muller*, 187 F.3d at 313 (quoting 29 C.F.R. § 1630.2(j)(3)(ii)).

Thus, the question before this Court is whether the facts alleged in the complaint support a finding that Keating was foreclosed from a class of jobs including high-way construction. Notably, however, "[a]n impairment that disqualifies a person from only a narrow range of jobs is not considered a substantially limiting one." *Heilweil v. Mount Sinai Hospital*, 32 F.3d 718, 723 (2d Cir.1994); *see Muller*, 187 F.3d at 313; *Wernick v. Federal Reserve Bank*, 91 F.3d 379, 383 (2d Cir.1996). The plaintiff claims that although he was able to work as an Engineering Aide in the Surveying Division of the DPW, he could not do so in the Highway Construction Division of the DPW. Unlike his former job as an in the Surveying Division, Keating's new job in the Highway Construction Division required that he be outdoors, in the heat and sun for long periods of time without shelter and without relief from the hot asphalt. Keating alleges that it is impossible for him, as a person who is intolerant to heat, to cope with the working conditions in the Highway Construction Division.

However, this Court finds that the inability to perform this narrow range of tasks does not "substantially limit" Keating's ability to perform the major life activity of working. Indeed, the position of an Engineering Aide in the Highway Construction Division of the DPW, and particularly, the Aide who measures asphalt, is a single, particular job, a limitation of which cannot constitute a substantial limitation of the major life activity of working. *See Muller*, 187 F.3d at 313; *Wernick*, 91 F.3d at 383–84; *Heilweil*, 32 F.3d at 723. Keating himself points out that he can perform other outdoor work, in the heat and under the sun, provided that he is able to take shelter occasionally and is not working with hot materials such as asphalt. Indeed, he was a successful Engineering Aide in the Surveying Division, and that job involved outdoor work.

Nevertheless, Keating also argues that his "physiological disorders restrict his ability to engage in a broad range of jobs

that are regularly performed year round outdoors or in unairconditioned areas." However, as noted, Keating performed six months of outdoor work in the Surveying Division. Thus, it appears that Keating is qualified to return to that position, which actually fits into the class of jobs Keating describes as "regularly performed year round outdoors or in unairconditioned areas." Furthermore, Keating does not allege that he was precluded from working on jobs other than those involving measuring asphalt during highway construction in his geographic area. Because Keating is still able to perform a broad range of jobs, even within the DPW, he is not substantially limited in his ability to work. Thus, this Court finds that Keating is not disabled under 42 U.S.C. § 12102(2)(A).

## 2. A Record of Such Impairment

■ Even if a plaintiff has failed to allege that his impairment substantially limits a major life activity, he may still qualify as disabled if he can provide a record of such impairment. See 42 U.S.C. § 12102(2)(B). According to the EEOC:

This part of the definition is satisfied if a record relied on by an employer indicates that the individual has or has had a substantially limiting impairment. The impairment indicated in the record must be an impairment that would substantially limit one or more of the individual's major life activities.

29 C.F.R. pt. 1630, App. Records that could potentially contain this information include education, medical or employment records. Id. However, "[t]he record must be one that shows an impairment that satisfies the ADA; a record reflecting a plaintiff's classification as disabled for other purposes or under other standards is not enough." Colwell, 158 F.3d at 645.

Keating argues that his "record of impairment" consists of two job interviews during which he explained to Volkman his medical history, intolerance to heat, and his need to avoid exposure to the sun. Keating's two job interviews do not constitute a "record" as that term is contemplated by the ADA. See 29 C.F.R. pt. 1630 App. (providing that the types of records that contain the required information include education, medical, and employment records). Further, even if the job interviews were a "record," the information he conveyed to Volkman about his impairment does not involve a greater degree of limitation of major life activities than the impairment described in the complaint. Therefore, Keating's claim based on a record of impairment fails because the "record" does not reflect a substantial limitation of his ability to work. As such, the Court finds that Keating is not disabled under 42 U.S.C. § 12102(2)(B). for the same reasons his claim of impairment in the complaint fails. See Colwell, 158 F.3d at 645.

## 3. Regarded as Disabled

■ The third way to establish a "disability" is to show that the plaintiff is "regarded as" having an impairment that substantially limits one or more major life activities. 42 U.S.C. § 12102(2)(C). Whether an employee is regarded as having a disability "turns on the employer's perception of the employee, a question of intent, not whether the employee has a disability." Francis v. City of Meriden, 129 F.3d 281, 284 (2d Cir.1997). However, the plaintiff must allege that the employer regarded him as disabled within the meaning of the ADA. See id. at 285–86. Thus, although the plaintiff is not required to allege that he actually has an impairment that substantially limits a major life activity, he must allege that his employer mistakenly regarded him as having such an impairment. See id. at 285–85; see also Colwell, 158 F.3d at 646.

Here, Keating alleges that Volkman, the supervisor of the Surveying Division, assured him that he would not be required to work in the heat and under the sun for long periods of time. Keating further alleges that when Volkman heard about the Keating's problems in the Highway Construction Division, Volkman told Schneck that he had an opening for Keating. These allegations are insufficient to meet the burden of alleging that the DPW "perceived [Keating] to be incapable of working in a broad range of jobs" suitable for persons of his age, experience, and training. *Ryan,* 135 F.3d at 872; *see Colwell,* 158 F.3d at 647. Volkman's attempts to keep Keating out of the heat and sun suggest no more than Volkman was aware of, and perhaps sympathetic towards, Keating's intolerance to heat, not that the DPW perceived that condition to be a disability under the ADA. Accordingly, Keating's claim of disability based on 42 U.S.C. § 12102(2)(C) fails as well.

In sum, Keating has not alleged (a) a physical impairment that substantially limits a major life activity; (b) a record of such impairment; or (c) that his employer regarded him as having such an impairment. *See* 42 U.S.C. § 12102(2). As such, he has alleged insufficient facts showing that he is disabled under the ADA. *See id.* Thus, Keating's complaint fails to state a claim of discriminatory discharge or failure to accommodate under the ADA. *See Ryan,* 135 F.3d at 869–70 (holding that to state a claim for discriminatory discharge under the ADA, the plaintiff must allege, among other things, that he suffers from a disability, as that term is defined in the ADA); *Lyons,* 68 F.3d at 1515 (holding that to state a claim for failure to accommodate under the ADA, the plaintiff must allege, among other things, that he suffers from a disability, as that term is defined in the ADA). Accordingly, the defendants' motion to dismiss the first claim is granted.

## C. The ADA Retaliation Claim

■ Keating's unlawful retaliation claim does not refer to a particular statute. Therefore, the Court will assume that it is brought pursuant to the ADA and the NYHRL. Notably, New York courts apply the same analysis to retaliation claims as federal courts. *See Hendler v. Intelecom USA, Inc.,* 963 F.Supp. 200, 212 (E.D.N.Y.1997).

The ADA prohibits, *inter alia,* retaliation against any individual who has asserted rights under the ADA:

> No person shall discriminate against any individual because such individual … made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C. § 12203(a). The Second Circuit has instructed that given the similarity between the retaliation provision of the ADA and the retaliation provision of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e–3(a), "it is appropriate to apply the framework used in analyzing retaliation claims under Title VII in analyzing a claim of retaliation under the ADA." *Sarno v. Douglas Elliman–Gibbons & Ives, Inc.,* 183 F.3d 155, 159 (2d Cir.1999); *see Weissman v. Dawn Joy Fashions, Inc.,* 214 F.3d 224, 234 (2d Cir. 2000).

"To establish a prima facie case of retaliation under the ADA, a plaintiff must establish that (1) the employee was engaged in an activity protected by the ADA, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action." *Sarno,* 183 F.3d at 159; *Francis v. Chemical Banking Corp.,* 62 F.Supp.2d 948, 961 (E.D.N.Y.1999). The plaintiff need not establish that the conduct he

opposed was actually a violation of the ADA. He need only show that he possessed a "good faith, reasonable belief that the underlying challenged actions of the employer violated th[at] law." *Sarno,* 183 F.3d at 159 (quoting *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 769 (2d Cir. 1998) (construing Title VII)); *see Muller,* 187 F.3d at 311. Thus, although Keating has not stated a claim for discriminatory discharge or failure to accommodate under the ADA, he could still state a claim for unlawful retaliation under the same statute. *See Weissman,* 214 F.3d at 233.

The complaint alleges that Keating engaged in a protected activity when he requested a reasonable accommodation. On or about June 8 1999, Keating spent several hours working in the Highway Construction division when the heat from the asphalt and the sun caused him to become violently ill, dizzy, nauseous, and disoriented. Keating's physical condition caused him to stumble into the path of oncoming traffic, and he narrowly missed being hit by a car. Keating left work and sought medical attention. On June 10, 1999, the plaintiff reported to the Highway Construction Division, and he asked Schneck to accommodate his physical condition, namely his heat intolerance and inability to remain exposed to the heat and sun for extended periods of time.

Under the ADA, individuals who suffer from a disability are entitled to reasonable accommodations, *see Lyons v. Legal Aid Society,* 68 F.3d 1512, 1515 (2d Cir.1995). *See Conley v. United Parcel Service,* 88 F.Supp.2d 16, 20 (E.D.N.Y.2000) (citing *Muller v. Costello,* 1996 WL 191977 (N.D.N.Y.1996)). Furthermore, as noted, courts generally have recognized that non-disabled individuals who request reasonable accommodation are protected against retaliation, provided the request was made in good faith. *See Weissman,* 214 F.3d at 233; *Sarno,* 183 F.3d at 159.

The facts alleged in the complaint show that Keating possessed a good faith belief that he was entitled to a reasonable accommodation based on what he thought was a disability. First, doctors had diagnosed Keating with heat intolerance and had instructed him to stay out of the sun and heat. Based on this medical information and advice, it was reasonable for Keating to believe that he had a medical disability that employers must accommodate. Moreover, Keating's request that the DPW accommodate what he believed to be a disability was reasonable. Keating had already been transferred between divisions of the DPW. Thus, it was reasonable for him to believe that he could be transferred into a division that did not involve extended exposure to the heat and sun. That Keating's request was reasonable and made in good faith is supported by the fact that Volkman told Keating that the DPW would not put him in a position that involved extended exposure to the sun and heat without the benefit of periodic shelter. Accordingly, Keating's request to Schneck was a protected activity, because the request was based on the good faith belief that he was entitled to a reasonable accommodation under the ADA. *See Weissman,* 214 F.3d at 233; *Sarno,* 183 F.3d at 159; *Conley,* 88 F.Supp.2d at 20.

Further, the Court notes that Keating's employer was aware of the protected activity, because Keating's request for a reasonable accommodation was made to his supervisor. Accordingly, Keating has sufficiently alleged the first two elements of the *prima facie* case for retaliation. *See Sarno,* 183 F.3d at 159; *Francis,* 62 F.Supp.2d at 961.

■ Keating claims that his resignation constitutes a constructive discharge, which he contends is the adverse employment action taken in retaliation for his request for reasonable accommodation. Construc-

tive discharge of an employee occurs when an employer "intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily." *Chertkova v. Connecticut General Life Ins. Co.*, 92 F.3d 81, 89 (2d Cir.1996); *see Pena v. Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir.1983). "Working conditions are intolerable if they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Chertkova*, 92 F.3d at 89. "[M]erely difficult or unpleasant working conditions do not rise to the level of constructive discharge." *Viera v. Olsten/Kimberly Quality Care*, 63 F.Supp.2d 413, 418 (S.D.N.Y. 1999).

Accepting all of the plaintiff's factual allegations as true, and drawing all inferences from those allegations in the light most favorable to him, *see Tarshis*, 211 F.3d at 30, the Court finds that the working conditions to which Keating was subjected were "so difficult [and] unpleasant that a reasonable person in [Keating's] shoes would have felt compelled to resign." *Chertkova*, 92 F.3d at 89. Although Schneck was aware that Keating became violently ill when exposed to the heat and sun for extended periods of time, he forced Keating to measure hot asphalt in the heat and sun without access to shelter. He deliberately refused to reassign Keating to a job where these conditions were not present, stating, "[Y]ou are in my ... world now." Keating continued to work on the construction site, where he again became ill from the effects of the heat, sun, and hot asphalt. Based on the allegations contained in the complaint, the plaintiff was forced to choose between resigning his position and subjecting himself to working conditions that were dangerous to his health. The Court finds that viewing these allegations in the light most favorable to the plaintiff, *see Tarshis*, 211 F.3d at 30, a reasonable person in Keating's shoes would have felt compelled to resign.

*See Chertkova*, 92 F.3d at 89. Accordingly, Keating has sufficiently alleged a constructive discharge, *see id.*, and thus, has satisfactorily pleaded the third element of a retaliation claim. *See Sarno*, 183 F.3d at 159; *Francis*, 62 F.Supp.2d at 961.

■ For the final element of the *prima facie* case, the plaintiff must demonstrate a causal connection between the protected activity and the adverse employment action. *See Sarno*, 183 F.3d at 159; *Francis*, 62 F.Supp.2d at 961. One manner of establishing this connection is by showing that the protected activity was followed closely by adverse treatment. *See Conley*, 88 F.Supp.2d at 21. Keating has sufficiently alleged this causal connection. He states that he requested the reasonable accommodation on June 10, 1999. He further alleges that between that date and June 28, 1999, the date of his resignation, Schneck repeatedly refused to take any steps to keep Keating out of the heat and sun for extended periods of time and, instead, continued to require that Keating measure hot asphalt while telling Keating that he was in "my world now." Keating's protected activity, Schneck's conduct, and the adverse employment action all occurred within an 18–day period. Viewing the complaint in the light most favorable to the plaintiff, a fact finder could reasonably conclude that there was a causal connection between the defendants' actions and the plaintiff's participation in protected activity. The proximity between the plaintiff's request for reasonable accommodations and the adverse actions shows a sufficient nexus to withstand a motion to dismiss.

As Keating has alleged facts supporting each of the elements of the *prima facie* case for retaliation, the Court finds that he has stated a claim for retaliation under the ADA and the NYHRL. Accordingly, the

defendant's motion to dismiss the fourth claim in the complaint is denied.

### C. The State Law Claims

#### 1. Notice of Claim

■ In his second and third claims, Keating alleges violations of the NYHRL by all of the defendants including Schneck. The defendants contend that Keating's claims arising under this statute must be dismissed on the grounds that Keating failed to file a timely Notice of Claim as required by General Municipal Law §§ 50–e and 50–i and County Law § 52(1).

The NYHRL prohibits employment discrimination on the basis of a disability, *see* N.Y. Exec. Law § 296, and allows aggrieved employees to bring suit in any court of appropriate jurisdiction. *See* N.Y. Exec. Law § 297(9). State claims brought under state law in federal court are subject to state procedural rules. *See Felder v. Casey,* 487 U.S. 131, 141, 108 S.Ct. 2302, 2313–14, 101 L.Ed.2d 123 (1988). Section 52 of the County Law also has a Notice of Claim provision provides, in relevant part:

> Any claim or notice of claim against a county for damage, injury or death, or for invasion of personal or property rights, of every name and nature ... and any other claim for damages arising at law or in equity, alleged to have been cause or sustained in whole or in part by or because of any misfeasance, omission of duty, negligence or wrongful act on the part of the county, its officers, agents, servants or employees, must be made and served in accordance with section fifty-e of the general municipal law.

County Law § 52(1). Section 50–e of the General Municipal Law, in turn, states that "[i]n any case founded upon tort where a notice of claim is required by law as a condition precedent to the commencement of an action ... the notice of claim shall ... be served ... within ninety days after the claim arises."

In *Mills v. County of Monroe,* 59 N.Y.2d 307, 464 N.Y.S.2d 709, 451 N.E.2d 456 (1983), the New York State Court of Appeals reviewed these notice of claim provisions in the context of an employment discrimination claim. In particular, the Court held that "[w]hen an employment discrimination action is brought against a county under the State or Federal civil rights statutes, the failure to timely file a notice of claim shall be fatal unless the action has been brought to vindicate a public interest or leave to serve late notice has been granted by the court." *Id.* at 308, 464 N.Y.S.2d at 709–10, 451 N.E.2d 456. The Court further held that an extension may not exceed the time limit for commencing the lawsuit. *See id.* at 311–12, 464 N.Y.S.2d at 711, 451 N.E.2d 456. Clearly defendant Suffolk County is a beneficiary of the notice of claim requirement under N.Y. County Law § 52(1). Further, defendants Gaffney, Bartha, the DPW, and Schneck are all County officials, employees, or entities and, therefore, claims against them are subject to the notice of claim provision as well. *See* N.Y. County Law § 52(1); *Mills,* 59 N.Y.2d at 308, 464 N.Y.S.2d at 709, 451 N.E.2d 456; *Freudenthal v. County of Nassau,* 283 A.D.2d 6, 726 N.Y.S.2d 116, 117 (2d Dept.2001); *see also, Pustilnik v. Hynes,* 2000 WL 914629 *7 (E.D.N.Y. June 27, 2000) (finding that county officials are subject to notice of claim requirement in N.Y. County Law § 52(1) in employment discrimination action).

This finding is to be distinguished from those cases in which courts have held that employment discrimination claims against municipal, as opposed to county defendants are exempt from the notice of claim requirement. *See, e.g., Pustilnik,* 2000 WL 914629 *7 (describing distinction between claims brought against municipal defendants and claims against county defendants); *Hamm v. NYC Office of the*

*Comptroller Alan Hevesi,* 1998 WL 92395 (S.D.N.Y. March 4, 1998) (holding that discrimination claims brought pursuant to Executive Law § 296 are not tort actions and are thus not subject to Section 50–e's notice of claim requirement); *Dimonda v. New York City Police Dep't,* 1996 WL 194325 *6 (S.D.N.Y. April 22, 1996) (same); *Davis v. New York City Dep't of Mental Health,* 1994 WL 669494 *1 (S.D.N.Y. Nov.29, 1994) (same). Those courts have determined that the notice of claim requirement does not apply to municipal defendants in employment discrimination actions, because General Municipal Law § 50–e(1) applies only to torts, and employment discrimination is not a tort. *See Pustilnik,* 2000 WL 914629 *7; *Hamm,* 1998 WL 92395; *Dimonda,* 1996 WL 194325 *6; *Davis,* 1994 WL 669494 *1. However, this distinction is inapplicable to the present case, because N.Y. County Law § 52 is a much broader statute than General Municipal Law § 50–e, *see Pustilnik,* 2000 WL 914629 *7, and is the statute that applies to the claims brought against the County. *See* N.Y. County Law § 52.

Applying section 50–e of the General Municipal Law to the facts of this case, the Court finds that Keating was required to serve a notice of claim upon the County of Suffolk within ninety days of the date his claim arose. *See* Gen.Mun.L. § 50–e(1)(a). Keating's claim accrued, at the latest, on June 28, 1999, the date of his resignation or constructive discharge. However, Keating did not file his notice of claim until February 12, 2000, well past the 90–day deadline. Keating's claims against the county, its officials and employees must be dismissed for failure to file a timely notice of claim, unless his action is brought to vindicate a public interest or he has been granted leave to serve a late notice of claim. *Mills,* 59 N.Y.2d at 308, 464 N.Y.S.2d at 709–10, 451 N.E.2d 456.

It is clear that Keating's action was not brought to vindicate a public interest. His allegations of discriminatory conduct on the part of the County refer only to conduct as it relates to him. *See id.* at 312, 464 N.Y.S.2d 709, 451 N.E.2d 456,. He seeks relief on the basis that he alone was discharged on the basis of his disability. *See id.* The complaint is limited to redressing only the plaintiff's injuries. Indeed, the prayer for relief seeks money damages and reinstatement of the plaintiff to his prior position. Clearly, Keating's action is brought merely to enforce a private right and not to vindicate a public interest. *See id.; see also, Turner v. County of Suffolk,* 955 F.Supp. 175, 177 (E.D.N.Y.1997); *Finley v. Giacobbe,* 827 F.Supp. 215, 219 (S.D.N.Y.1993). Accordingly, the plaintiff cannot avail himself of the public interest exception to the notice of claim requirement.

Keating has not sought leave from any court to file a late notice of claim. Rather, he argues that the County received actual notice of his complaints in a timely fashion. Keating asserts that the Employee Injury and Illness Report he filed with Risk Management on June 8, 1999 and notes from his exit interview conducted on August 3, 1999 constitute timely and sufficient substitute notice, because the information provided in those documents is the same as the information required by § 50–e(2). Keating has attached a copy of each of these documents to his affirmation in opposition to the defendants' motion to dismiss.

At the top of Keating's Exit Interview Questionnaire (the "Questionnaire") there is a statement that reads:

COMPLETION OF THIS FORM IS COMPLETELY VOLUNTARY AND ALL INFORMATION SUPPLIED WILL BE HELD IN CONFIDENCE

BY THE DEPARTMENT OF CIVIL SERVICE.

Underneath that statement, the Questionnaire states Keating's name, that he worked as an engineering aide in the DPW from September 21, 1998 through June 28, 1999, and that his supervisor was Schneck. The Questionnaire indicates that Keating resigned due to health reasons and states that Schneck displayed "unfair practices," was unwilling to make a reasonable accommodation, and was verbally abusive and physically threatening. Keating indicated that prior to working with the paving materials in the Highway Construction Division, his working conditions were "fine." Keating also stated that the portion of his job that was "most unsatisfactory" was "[n]ot being allowed the smallest accommodation for health reasons." In response to the question, "If you had the chance to start over, knowing what you know today, would you have become a County employee," Keating stated, "Yes but questionable in that department."

Three pages of additional comments, akin to a narrative, are attached to the Questionnaire. In this narrative, Keating stated that he had informed the DPW that he had a history of health problems, and the DPW hired him with this knowledge. Keating said that at the time he was hired, he believed he could perform the work required of him provided that accommodations could be made in extreme heat situations.

Keating also explained that "Volkman" loaned him to "construction" for two days. On June 8, 1999 he measured asphalt as it was being poured to ensure that the pavement was the correct thickness. Keating states that the machine was emitting 300–degree heat. There also was record-breaking heat that day. Due to these extreme heat conditions, Keating passed out and vomited. Schneck told Keating that if he refused to remain on the job, he would be fired. Keating left the construction site. In his narrative, Keating described the paving job as "unbearable."

Keating stated that the following day, he met with Schneck. Schneck wanted to "forget" the incident but stressed that paving was a job requirement. According to Keating, Schneck told him, "Fuck you. You're in my department, and you do things my way or you re-evaluate your career here."

The Employee Injury and Illness Report (the "Report"), dated June 10, 1999, contains an employee statement, which reads:

> "My supervisor (George Volkman) knew of my health status and heat sensitivity before I was hired. On Tues. 6–8–99 I was on temporary loan to construction. The hottest day of the year so far (record-breaking). ON this day, I suffered heat exhaustion, and was told I was fired."

The Report indicates that the injury was to Keating's "whole body" and occurred on the "Sag Tpke" in Sag Harbor. At the bottom of the form the following instruction appears: "Please submit completed form to your department payroll rep."

The test for sufficiency of a notice of claim is whether it includes enough information to enable the municipality to investigate the claim adequately. *See O'Brien v. City of Syracuse,* 54 N.Y.2d 353, 358, 445 N.Y.S.2d 687, 429 N.E.2d 1158 (1981); *Raisner v. City of New York,* 272 A.D.2d 460, 461, 707 N.Y.S.2d 498, 499 (2d Dept. 2000); *Wai Man Hui v. Town of Oyster Bay,* 267 A.D.2d 233, 234, 699 N.Y.S.2d 485, 486 (2d Dept.1999) ("The purpose of the notice of claim requirement is to allow the municipal corporation adequate opportunity to investigate the circumstance[s] surrounding the accident and explore the merits of the claim while the information is likely to be available."). The statute itself

requires: the name and post-office address of the claimant; the nature of the claim; the time place and manner in which the claim arose, and the items of damage or injury claimed to have been sustained. Gen.Mun.L. § 50–e(2). "A theory of liability not mentioned in the notice of claim generally may not be asserted in a subsequent lawsuit." *Lieber v. Village of Spring Valley*, 40 F.Supp.2d 525, 530 (S.D.N.Y.1999); *see Silverman v. City of New York*, 2001 WL 218943 *9 (E.D.N.Y. Feb.2, 2001); *Tiburcio v. New York City Transit Auth.*, 270 A.D.2d 110, 110, 704 N.Y.S.2d 473, 473 (1st Dept.2000) (holding that plaintiff's notice of claim was defective, because it did not provide the defendant with notice of the plaintiff's theory of liability); *see also Ford v. Babylon Union Free School District*, 213 A.D.2d 447, 448, 624 N.Y.S.2d 435, 435 (2d Dept.1995) (finding that amendments to a notice of claim that asserted new theories of liability were time barred).

Here, the Questionnaire and Report do not pass the test for sufficiency of the notice of claim. As noted, the Questionnaire explains that Keating became ill while working at a highway construction site on June 8, 1999, and that Keating separated from county employment because of his health, Schneck's unfair practices, and Schneck's refusal to make a reasonable accommodation. However, the Questionnaire gives no indication that Keating intended to bring a claim against the County based on these facts, much less that the cornerstone of his claim would be that he was disabled. Nowhere in the Questionnaire does Keating use the word "disabled" nor does he suggest that the County or Schneck discriminated against him. Thus, the Court finds that the Questionnaire does not include enough information to enable the county to investigate the claim adequately. *See O'Brien*, 54 N.Y.2d at 358, 445 N.Y.S.2d at 687, 429 N.E.2d 1158; *Raisner*, 272 A.D.2d at 461, 707

N.Y.S.2d at 499; *Wai Man*, 267 A.D.2d at 234, 699 N.Y.S.2d at 486.

Indeed, "knowledge of the facts underlying an occurrence does not constitute knowledge of the claim." *Lenoir v. New York City Housing Authority*, 240 A.D.2d 497, 498, 658 N.Y.S.2d 140, 141 (2d Dept. 1997). Moreover, the Questionnaire was submitted to the Suffolk County Department of Civil Service, which indicated that the document would be kept confidential. A confidential document submitted to the Civil Service Department to assist that organization with its business practices can hardly be considered sufficient notice to the County that Keating would be filing a lawsuit against it based on his physical disability. *See Lenoir*, 240 A.D.2d at 498, 658 N.Y.S.2d at 141 (holding that police record does not constitute actual notice of a claim, because the police investigation was geared toward finding perpetrators, not toward the preparation of a possible claim of negligence by the housing authority); *see also Mark v. Board of Ed.*, 255 A.D.2d 586, 586–87, 681 N.Y.S.2d 81, 82 (2d Dept.1998) (finding that filing a workers compensation claim does not constitute actual notice of claim).

To adopt the plaintiff's position that such a document gives the County timely actual notice of the plaintiff's claim would be to substitute an Exit Interview Questionnaire for notices of claim in every instance, mandate that counties investigate every possible cause of action that is suggested in an Exit Interview Questionnaire, and effectively vitiate the protections afforded to counties by N.Y. County Law § 52 and General Municipal Law § 50–e. *See Olivera v. City of New York*, 270 A.D.2d 5, 5, 704 N.Y.S.2d 42, 43 (1st Dept. 2000).

 The Employee Illness and Injury Report also does not satisfy the test for sufficiency of the notice of claim. Like the

Questionnaire, the Report does not give the County any indication that the plaintiff intended to file a lawsuit against the County much less that such a lawsuit would be based on an employment discrimination claim or brought pursuant to the NYHRL. Rather, the Report simply states that on June 8, 1999, Keating was injured in that he suffered heat exhaustion. In fact, the Report could not be considered a notice of Keating's employment discrimination claim, because it was submitted on June 10, 1999, 18 days prior to Keating's claimed adverse employment action, namely the constructive discharge. Accordingly, the Court finds that the Report is not timely actual notice of Keating's claim against the County.

In light of the fact that neither the Questionnaire nor the Report constitutes actual notice of claim, the Court finds that Keating failed to serve the County with a timely notice of claim pursuant to N.Y. County Law § 52 and General Municipal Law § 50–e. Accordingly, the second and third claims, which are the state claims against all of the defendants and Schneck, respectively are dismissed. In addition, to the extent that the retaliation claim is brought pursuant to the NYHRL, that portion of the claim is also dismissed on the ground that Keating failed to file a timely notice of claim.

### IV. *CONCLUSION*

Based on the foregoing, it is hereby

**ORDERED,** that the defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Fed.R.Civ.P. is **GRANTED** in part, and the first, second and third claims of the complaint are dismissed. Also, the portion of the fourth claim that is brought pursuant to the NYHRL is dismissed; and it is further

**ORDERED,** that the defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Fed.R.Civ.P. is **DENIED** insofar as the portion of the fourth claim that is brought pursuant to the ADA based on retaliation is not dismissed.

**SO ORDERED.**