Dawn CONLEY, Plaintiff,

v.

**UNITED PARCEL SERVICE, Defendant.**

No. 99–CV–3180(ADS)(VVP).

United States District Court, E.D. New York.

March 3, 2000.

Scott Michael Mishkin, P.C., Islandia, NY, for Plaintiff.

Proskauer Rose LLP, New York, NY, By Aaron J. Schindel, Of Counsel, for Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This case involves allegations that the Defendant United Parcel Service ("UPS") violated the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA") by failing to accommodate the Plaintiff's alleged disability resulting from her suffering a miscarriage and by retaliating against her for requesting a reasonable accommodation. Presently before the Court is the Defendant's motion to dismiss the complaint under Rule 12(b)(6).

### BACKGROUND

These facts are taken from the allegations in the Plaintiff's complaint. The Plaintiff began working for UPS as a Package Car Driver on or about May 28, 1985. On February 16, 1997, the Plaintiff suffered a miscarriage. That same day, the Plaintiff's fiance spoke with the Plaintiff's manager, Peter Pursino, and notified him that the Plaintiff would be out of work for the rest of the week. On February 22, 1997, the Plaintiff returned to her position, bringing a note from her doctor explaining that her absence was due to a medical emergency.

The UPS company policy grants an employee six sick days within a twelve month period. UPS added the five days the Plaintiff was out due to her miscarriage to her five previous days of unrelated absences in the preceding twelve month period and determined that she had exceeded her allotted sick leave. Two days after the Plaintiff returned to work from her mis-

carriage, UPS issued her a warning letter, charging her with being absent for 10 days in a twelve month period. The Plaintiff alleges that her miscarriage constituted a disability under the terms of the ADA, and that a five-day leave of absence after her miscarriage was a reasonable accommodation necessary for her to be able to return to work and perform her essential work functions. She contends that by issuing the warning letter, UPS denied her that reasonable accommodation.

Furthermore, the Plaintiff alleges that she has been subjected to harassment because of her request for reasonable accommodation. From time to time, UPS reviews their Package Car drivers by on the job supervision ("OJS rides"). The Plaintiff contends that, prior to her miscarriage, she had never been subjected to an OJS ride, but that after her miscarriage, she has been subjected to eight separate OJS rides. During the various OJS rides, the Plaintiff has been subjected to additional harassment and unfound criticism. For example, she has been verbally reprimanded for stopping the truck to go to the bathroom, and for failing to blow the truck horn when arriving at delivery stops, even though the use of the horn, except in emergencies, is an violation of company policies. On one of the OJS rides, her supervisor, Omar Caesar, urinated in a cup in the back of the truck while the Plaintiff was present and stated while he was doing it, "it all won't fit."

The Plaintiff's complaint, read broadly, alleges two causes of action: (i) failure to accommodate under the ADA, and (ii) retaliation under the ADA for requesting a reasonable accommodation. UPS moves to dismiss the complaint under Fed. R.Civ.P. 12(b)(6) for failure to state a claim on the ground that a miscarriage does not qualify as a "disability" under the ADA.

### DISCUSSION

In a ruling on a motion under Fed. R.Civ.P. 12(b)(6), the court is to look only to the allegations of the complaint and any documents attached to or incorporated by reference in the complaint, *Newman &*

*Schwartz v. Asplundh Tree Expert Co.,* 102 F.3d 660, 662 (2d Cir.1996); to assume all well-pleaded factual allegations to be true; and to view all reasonable inferences that can be drawn from such allegations and documents in the light most favorable to the plaintiff. *Dangler v. New York City Off Track Betting Corp.,* 193 F.3d 130 (2d Cir.1999). A motion to dismiss will only be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Posr v. Court Officer Shield # 207,* 180 F.3d 409, 413 (2d Cir. 1999).

Title I of the ADA prohibits employers from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (Supp.1995). Employers of persons with disabilities are required to make reasonable accommodations for otherwise qualified individuals with disabilities, 42 U.S.C. § 12112(b)(5)(a), and employers are prohibited from retaliating against an employee that engaged in activities protected under the statute. 42 U.S.C. § 12203(b).

### A. As to the failure to accommodate claim

In order to establish a prima facie case of failure to accommodate, a plaintiff must show that: (i) that plaintiff was an individual with a "disability" within the meaning of the statute; (ii) the employer had notice of the disability; (iii) that plaintiff with reasonable accommodation could perform the essential functions of her position; and (iv) the employer refused to make such accommodations. *See Mitchell v. Washingtonville Central School District,* 190 F.3d 1 (2d Cir.1999); *Yaba v. Roosevelt,* 961 F.Supp. 611, 619 (S.D.N.Y. 1997).

A person is "disabled" under the ADA where that person: (i) has a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment. 42 U.S.C. § 12102(2); *Colwell v. Suffolk County Police Department,* 158 F.3d 635, 641 (2d Cir.1998). An impairment "substantially limits" a life activity where a person with that impairment is unable to perform a major life activity that the average person in the general population can perform or if significantly restricted as to the condition, manner or duration under which she can perform a particular major life activity as compared to the average person. 29 C.F.R. § 1630.2(j)(1)(ii); *Cerrato v. Durham,* 941 F.Supp. 388, 392 (S.D.N.Y.1996). Major life activities include functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. *Id.*

In determining whether a limitation is "substantial," courts consider the nature and severity of the impairment, the duration or expected duration of the impairment, and the permanent or long term impact of or the expected long term impact of or resulting from the impairment. 29 C.F.R. § 1630.2(j)(2); *Durant v. Chemical/Chase Bank/Manhattan,* 81 F.Supp.2d 518 (S.D.N.Y.2000); *Ditullio v. Village of Massena,* 81 F.Supp.2d 397 (N.D.N.Y. 2000). For the purposes of the ADA, short term, temporary restrictions are not "substantially limiting" and do not render a person "disabled." *Id.* Conditions, such as pregnancy, that are not the result of a physiological disorder are not impairments, nor are temporary, non-chronic impairments of short duration with little or no long term or permanent impact. 29 C.F.R. § 1630.2(h)(1).

■ In the present case, the Plaintiff alleges that her miscarriage constitutes a "disability." However, the Plaintiff does not articulate any "major life activity" that her miscarriage "substantially limited." Any limitations on the Plaintiff's activities resulting from her miscarriage were of short duration, as she returned to work without any further need for accommodation after her five day recovery period. As the EEOC has explained, short-term, non-chronic impairments with no permanent impact, such as the Plaintiff's miscarriage here, are not considered "disabilities" under the ADA.

The Plaintiff has not cited any case where a court has held a miscarriage to be a disability under the ADA. The Plaintiff cites *Horwitz v. Sterling Miami, Inc.,* 1998 WL 245883 (N.D. Ill. May 4, 1998) for the proposition that a miscarriage may constitute a disability under the ADA. However, that case actually stands for the opposite conclusion. In *Horwitz,* the plaintiff requested a one week leave from work after suffering a miscarriage. Upon her return to work, her employer refused to assign any work to her, and she filed a claim under the ADA. *Id.* The court held that plaintiff's complaint did not sufficiently allege a disability, as "the present complaint alleges nothing more that a short term illness resulting from an unfortunate pregnancy loss." *Id.*

Courts have generally held that complications arising from pregnancy do not constitute a disability under the ADA. *See LaCoparra v. Pergament Home Ctrs., Inc.,* 982 F.Supp. 213, 228 (S.D.N.Y.1997) (holding that a woman granted nine-month leave of absence for pregnancy related complications was not considered disabled); *Tsetseranos v. Tech Prototype, Inc.,* 893 F.Supp. 109, 119 (D.N.H.1995) (plaintiff was out of work for several days because of pregnancy complicated by ovarian cysts was not disabled); *Gudenkauf v. Stauffer Communications, Inc.,* 922 F.Supp. 465, 474 (D.Kan.1996) (typical complications of pregnancy are not disabilities).

It is only in extremely rare cases that courts have found that conditions arising out of pregnancy qualify under the ADA as a disability. *See e.g. Hernandez v. City of Hartford,* 959 F.Supp. 125 (D.Conn.1997)

(premature onset of labor that could only be controlled by medication constituted a "disability"); *Patterson v. Xerox Corp.*, 901 F.Supp. 274 (N.D.Ill.1995) (holding that plaintiff's severe back pain from being pregnant substantially limited her ability to sit at work for extended periods of time). However, in this type of case, it is the physiological impairment that results from the complications that renders the person disabled. *Bond v. Sterling, Inc.*, 997 F.Supp. 306, 310 (N.D.N.Y.1998). The Plaintiff here cannot point to any significant physiological impairment she suffered incident to her miscarriage; indeed, her short recovery period indicates that the Plaintiff suffered no permanent or long-term complications as a result of the miscarriage. *LaCoparra*, 982 F.Supp. at 228 (plaintiff who had previously suffered a miscarriage was not disabled under ADA).

Therefore, the Court finds that the Plaintiff has failed to plead that she has a "disability" as that term is defined by the ADA. Therefore, the Plaintiff's failure to accommodate claim must fail, as she cannot establish the first element of a prima facie case.

### B. As to the cause of action for retaliation

■ A prima facie case of retaliation under the ADA requires the plaintiff to show that: (i) the employee was engaged in activity protected by the ADA; (ii) the plaintiff suffered an adverse employment action; and (iii) there existed a causal connection between the protected activity and the adverse employment action. *See Muller v. Costello*, 187 F.3d 298 (2d Cir.1999); *Kulniszewski v. Swist*, 175 F.3d 1008, 1999 WL 97362 (2d Cir.1999); *Sarno v. Douglas–Elliman Gibbons & Ives, Inc.*, 183 F.3d 155 (2d Cir.1999). Section 12203(b) of the ADA, provides that "[i]t shall be unlawful to coerce, intimidate, threaten or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed ... any right granted or protected by this chapter."

Several courts have held that a non-disabled employee is nonetheless protected against retaliation if the employee made a good faith request for a reasonable accommodation. *See e.g. Butler v. City of Prairie Village*, 974 F.Supp. 1386, 1402 (D.Kan. 1997), *rev'd in part*, 172 F.3d 736 (10th Cir.1999); *Soileau v. Guilford of Maine, Inc.*, 105 F.3d 12, 16 (1st Cir.1997); *Matthews v. American States Ins. Co.*, 1997 WL 752442 (D.Kan.1997). This "good faith" analysis squares with the Second Circuit's rulings that a non-disabled person who files a complaint of disability discrimination is engaging in protected activity as long as that person can establish that she had a "good faith, reasonable belief that the underlying challenged actions of the employer violated the law." *Sarno*, 183 F.3d at 159, *quoting Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998). The plaintiff does not have to establish that the conduct she opposed was actually a violation of the statute. *Id.*

■ The complaint indicates that the Plaintiff engaged in at least two separate protected activities under the ADA. First, the Plaintiff alleges that she filed a charge of discrimination with the EEOC. Filing a charge of discrimination is a protected activity under 42 U.S.C. § 12203(a). Second, and more importantly, the Plaintiff's request for a reasonable accommodations is itself a protected activity. *See Muller v. Costello*, 1996 WL 191977 (N.D.N.Y.1996). As mentioned above, the courts have generally recognized that non-disabled individuals who request reasonable accommodation are protected against retaliation, provided the request was made in good faith. Here, the Court must view the allegations in the complaint in the light most favorable to the Plaintiff, and thus, the Court assumes that the Plaintiff's claim that she was entitled to a reasonable accommodation, though mistaken, was made in good faith. Thus, the Plaintiff has adequately alleged that she engaged in a protected activity under the ADA.

The plaintiff has also sufficiently alleged the second element of a claim of retaliation: that she was subjected to an adverse employment action. The complaint contends that, prior to her request for an accommodation, the Plaintiff had never been subjected to an OJS ride; since her request, her supervisors have accompanied her on eight separate trips. Increased supervision can constitute an adverse action by an employer. *See Dortz v. City of New York,* 904 F.Supp. 127, 156 (S.D.N.Y.1995); *Meckenberg v. New York City Off–Track Betting,* 42 F.Supp.2d 359, 381 (S.D.N.Y.1999). Moreover, the Plaintiff alleges that these OJS rides have resulted in her receiving unfounded criticism for stopping the truck to go to the bathroom and for failing to blow the horn when making a delivery. Viewing the complaint in the light most favorable to the Plaintiff at this stage of the litigation, the Court finds that the Plaintiff has alleged sufficient adverse employment actions to survive a motion to dismiss.

For the final element of the prima facie case, the Plaintiff must demonstrate a causal connection between the protected activity and the adverse employment action. One manner of establishing this connection is by showing that the protected activity was followed closely by adverse treatment. *See Dortz,* 904 F.Supp. at 157. In this case, the Plaintiff's complaint alleges that in 12 years as a Package Car driver, she was never subjected to an OJS ride, and that shortly after requesting a reasonable accommodation, she was subjected to eight separate OJS rides and unfounded criticism of her work performance. Viewing the evidence in the light most favorable to the plaintiff, a fact finder could reasonably conclude that there was a causal connection between the defendant's actions and the plaintiff's participation in protected activity. The proximity between plaintiff's request for reasonable accommodations and the adverse actions show a sufficient nexus to withstand a motion to dismiss.

*CONCLUSION*

For the reasons set forth above, the motion by UPS to dismiss the Plaintiff's cause of action for failure to accommodate pursuant to Fed.R.Civ.P. 12(b)(6) is **GRANTED.** The motion by UPS to dismiss the Plaintiff's cause of action for retaliation pursuant to Fed.R.Civ.P. 12(b)(6) is **DENIED.**

**SO ORDERED.**