**Jacalyn THORNTON, Plaintiff–Appellant,**

v.

**McCLATCHY NEWSPAPERS, INC., Defendant–Appellee.**

No. 99–15857.

United States Court of Appeals, Ninth Circuit.

Filed June 11, 2002.

---

Before KOZINSKI, HAWKINS and BERZON, Circuit Judges.

## ORDER SUPPLEMENTING OPINION

HAWKINS, Circuit Judge.

### ORDER

We stayed the mandate of this case pending resolution of the Supreme Court's decision in *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). Having solicited and considered the views of the parties on the impact of that case, we write to clarify the Opinion we earlier filed. *Thornton v. McClatchy Newspapers, Inc.*, 261 F.3d 789(9th Cir.2001).

■ We note first that although we earlier viewed as waived Thornton's argument that she is substantially limited by the restriction she faces on continuous keyboarding and writing, *see id.* at 797 n. 5, we are now prepared to give this argument, in our view her strongest argument, consideration, and we do so for two reasons. First, a party may pursue an issue not raised earlier when a change in the law occurs after the brief was filed. *Louisiana–Pacific Corp. v. ASARCO, Inc.*, 24 F.3d 1565, 1583, (9th Cir.1994). Here, the Supreme Court issued a new opinion clarifying the law in this area. More importantly, because of the supplemental briefing, the parties have had a full and fair opportunity to argue the merits of the issue.

That said, we are unpersuaded that Thornton's inability to continuously keyboard or write is within the confines of what the *Williams* Court defined as a "substantial limitation." The Court ruled that "to be substantially limited in per-

forming manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance in most people's daily lives." *Williams*, 122 S.Ct. at 691.

While most lawyers or law office personnel would undoubtedly consider continuous keyboarding and handwriting to be activities of central importance to their lives, we cannot say that is so for "most people's daily lives," as *Williams* requires. Being restricted from *continuous* keyboarding and handwriting is different from what Judge Berzon describes in her dissent as the "ability to use one's arms and hands to produce, by computer (or by handwriting), written communications and records." 261 F.3d at 801. Thornton's condition does not stop her from either activity; she simply cannot pursue them continuously.

■ We concede that Thornton's life has been diminished by her inability to engage in continuous keyboarding or handwriting. But diminished is different from "substantially limited," at least as understood by Congress and the Supreme Court. For this reason, our earlier judgment—that the district court's grant of summary judgment on Thornton's ADA claims should be affirmed—was correct.

Order; Dissent by Judge BERZON.

BERZON, Circuit Judge, dissenting.

The majority has come a long way in this case regarding whether Ms. Thornton may establish a disability because of an impairment in her ability to perform manual tasks. In its original opinion, the majority held that she could not possibly do so, no matter how severe her impediment in keyboarding and handwriting, because she could perform a few *other* manual tasks. Now, after the Supreme Court's opinion in *Toyota Motor Manufacturing v.*

*Williams*, 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002), the majority implicitly recognizes that it was incorrect in its quantitative approach to manual tasks disability, and that the inability to communicate in writing can, if sufficiently severe, constitute a manual tasks disability regardless of the ability to carry out other daily tasks.

This reconsideration of its original premises does not, however, lead the majority to reverse the grant of summary judgment to McClatchy. Instead, the majority now seeks instead to sustain its earlier result on a much more limited ground—that Ms. Thornton's *particular* impairment in writing and keyboarding was not substantial enough to constitute a disability, because, the majority assumes, she could communicate in writing sufficiently to carry out daily tasks.

*Williams* is indeed entirely consistent with the views expressed in my original dissenting opinion and does indeed require reconsidering the rationale of the majority's initial decision. As to the more specific issue the majority now addresses, however, I believe that *Williams* requires reversal of the grant of summary judgment to McClatchy and a remand for trial.

1. The original majority opinion in this case was premised on the proposition that in determining whether or not a person is substantially limited in performing manual tasks, a court is required to look at a broad range of manual tasks. The critical conclusion of the majority opinion was that Thornton's "inability to type and write for extended periods of time is not sufficient to outweigh the large number of manual tasks that she can perform." *Thornton v. McClatchy Newspapers, Inc.*, 261 F.3d 789, 797 (9th Cir.2001).

The *Williams* opinion applies no such quantitative approach. The central holding in *Williams* is that "to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." 122 S.Ct. at 691.(The impairment must also be permanent or long-term, *id.*, but there is no dispute that Ms. Thornton's impairment was long-term.) However (and *Williams* is quite specific about this), there is no need to look at a *class* of tasks in that regard. *Id.* at 692–93. Rather, *Williams* expressly contemplates that a single manual task, if it is central to daily life, can be adequate to demonstrate substantial impairment. *See id.* at 691("In order for performing manual tasks to fit into this category ... the manual tasks in question must be central to daily life. *If* each of the tasks included in the major life activity of performing manual tasks does not independently qualify as a major life activity, then together they must do so.") (emphasis added).

These passages state that *only* if one of the tasks does not by itself qualify as a major life activity is the ability to perform other such tasks relevant. So *Williams* established, and the majority now recognizes, that manual tasks need not necessarily be analyzed in the aggregate—the central point of my dissent to the original majority opinion.

Second, as the majority also implicitly recognizes, *Williams* certainly cannot be read as a holding that individuals with carpal tunnel syndrome, or a similar condition such as Thornton's, are necessarily *not* disabled. *Williams* was quite clear about the fact that an individual's carpal tunnel syndrome diagnosis on its own does not indicate whether or not an individual has a disability within the meaning of the ADA. The person might or might not be disabled, depending on the degree of impairment caused by the syndrome. *Id.* at 692.

Third, *Williams* emphasizes that the interpretation of the disability definition in the ADA must take into account not only the employment sections of the statute, but "the other portions of the Act" as well. *Id.* at 693. As I showed in my initial dissent, if one analyzes the import of an inability to perform handwriting tasks or computer use in making a determination of disability as the majority originally did, the impact on other sections of the Act, particularly those affecting education and test taking, could be quite profound.

For all these reasons, the majority is quite correct to conclude that after *Williams,* it is apparent that carpal tunnel and similar impairments that result in limitations on handwriting and computer use *can* constitute, standing alone, a substantial limitation in the ability to carry out manual tasks. The question, then, is whether Ms. Thornton demonstrated that her handwriting/keyboard limitation is substantial.

2. It is on this question that I continue to differ from the majority, although the difference between us is considerably narrower than it was originally.

The majority appears to maintain that workplace activities are not relevant at all to the question whether an activity is "of central importance in most people's daily lives." *Id.* at 691; *see* ante at 1046. The peculiar idea that work is not "of central importance in most people's daily lives"— or that Thornton's life was only diminished, not "substantially limited," by the fact that she cannot as a practical matter use a tool fundamental in the modern economy— cannot be reconciled with *Williams.*

Throughout the *Williams* opinion, the language discouraging reliance on job-related manual tasks refers to the inability to perform a *"specific* job," or "the manual tasks unique to any *particular* job," or *"occupation-specific* tasks." Nothing in the opinion in *Williams* indicates that the inability to perform tasks that will have widespread, pervasive effect on one's ability to engage in gainful employment, certainly an aspect of most people's daily lives, is irrelevant. To the contrary, *Williams* recognizes that even "occupation-specific tasks"—and use of a computer or writing by hand are *not* occupation-specific—may have "limited relevance to the manual task inquiry," although *Williams* certainly indicates that this consideration cannot be conclusive or dispositive. *Id.* at 693.

As I showed in my original dissenting opinion, the ability to use a keyboard (and to write) is essential not to *particular* occupations, as was the ability to perform repetitive tasks with arms and hands extended over one's head in *Williams,* but to the ability in the modern world both to learn and to work. Learning and working are part of most people's daily lives at various junctures. A degree of limitation in a manual task that seriously interferes with learning and working should be considered "substantial" under the statute.

Jacalyn Thornton, according to her evidence—which is disputed, but that is not relevant for present purposes—could not use a keyboard for more than 30 minutes at a time or 60 minutes intermittently per day, and could not write for more than 5 minutes at a time or 60 minutes intermittently per day. Although the majority now characterizes those limitations as the inability to keyboard or write "continuously," that characterization is inaccurate: Most people would not think that using a keyboard for 30 minutes is using it "continuously," and using a keyboard intermittently for more that 60 minutes a day is surely not using it "continuously."

For many students, for most of the wide variety of employees who work at jobs that require computer use, and for many individuals who use computers for such daily

tasks as making travel arrangements, e-mailing to friends and relatives, paying bills, filing tax returns and other forms, and shopping, the inability to use a computer—or, alternatively, to handwrite—for more than 60 minutes *total* in a day could fundamentally alter the way they live their lives, absent accommodation. The impact on a reporter such as Jacalyn Thornton could certainly be substantial. One can infer that it is likely—if the limitations claimed are accurate—that she would have to give up not only her job but her long term profession, absent accommodation, and would have a hard time transferring her writing skills to other areas of endeavor.

In short, on the present record, there is sufficient basis, viewing the evidence most favorably to Thornton, to conclude that if the impact on Thornton's professional life is given some weight along with the impact on her personal life, a jury could decide that the limitation on her ability to perform the manual tasks of keyboarding and handwriting is substantial. I therefore continue respectfully to dissent from the affirmance of summary judgment for McClatchy.