Sharon MUNCK, Plaintiff

v.

NEW HAVEN SAVINGS BANK and Lillian D'Amico, Defendants.

No. CIV.A.3–01–CV–772 (J).

United States District Court, D. Connecticut.

March 17, 2003.

Eugene N. Axelrod, Michael J. Melly, Woodbridge, CT, for Plaintiff.

Stephen B. Harris, Lori Rittman Clark, Gayle C. Wintjen, Wiggin & Dana, Hartford, CT, for Defendants.

## RULING ON DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 33]

HALL, District Judge.

## I. INTRODUCTION

In this case, Sharon Munck ("Munck") claims employment discrimination by New Haven Savings Bank ("NHSB") and Lillian D'Amico ("D'Amico"), her former supervisor. Munck alleges violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, breach of an implied contract, breach of the covenant of good faith and fair dealing, promissory estoppel, negligent infliction of emotional distress, and wrongful discharge. NHSB and D'Amico have moved for partial summary judgment.

## II. BACKGROUND

The complaint alleges that Munck began working at NHSB on December 6, 1993 as a bank teller. In August 1998, she became the acting Senior Teller at the Guilford Branch. On November 18, 1999, she injured her right side in an automobile accident. Munck returned to work in January 2000.

NHSB maintains right-handed and left-handed teller windows. When Munck returned to work, she asked her supervisor, D'Amico, to place her at a left-handed teller window as an accommodation to the injuries on her right side. The complaint alleges that D'Amico refused, despite available left-handed teller windows, and placed Munck at the drive-up teller window, which is geared toward right-handed tellers. When Munck complained of discomfort and decreased performance at the drive-up window, D'Amico moved her to a right-handed teller window. According to the complaint, working at the window aggravated Munck's injuries. She alleges that she provided NHSB a note from her doctor that documented the injuries and subsequent aggravation. On February 11, 2000, D'Amico informed Munck that she would be moved to a left-handed teller window.

The complaint states that Munck and a co-worker subsequently noticed potential security violations by D'Amico. In June 2000, Munck brought these violations to the attention of NHSB's head of security, who later confirmed the security breaches through investigation. On July 7, 2000, the complaint alleges that the head teller informed Munck that D'Amico had in-

structed that Munck be moved to a right-handed teller window. Munck was unable to convince D'Amico, who became agitated and yelled at Munck when she requested a different window, or the head teller to keep her at a left-handed window. Refusing to work at a right-handed window because of the risk of further injury, Munck left work. She later called the NHSB's head of security and its head of human resources. On July 10, 2000, NHSB terminated Munck's employment.

On August 1, 2000, Munck filed a claim with the Connecticut Commission on Human Rights and Opportunities ("CCHRO") and Equal Employment Opportunity Commission ("EEOC"). On January 17, 2001, Munck received a release from the CCHRO. On February 2, 2001, Munck received a right to sue notice from the EEOC.

## III. DISCUSSION

The defendants have moved for summary judgment in the case on counts 1,2,3,6,7 and 8 of the plaintiff's complaint. Summary judgment is only appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. (Fed. R.Civ.P. 56(c)); *Hermes Int'l v. Lederer de Paris Fifth Ave. Inc.,* 219 F.3d 104, 107 (2d Cir.2000). The burden of showing that no genuine factual dispute exists rests upon the moving party. *Carlton v. Mystic Transp., Inc.,* 202 F.3d 129, 133 (2d Cir. 2000) (citing *Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1223 (2d Cir.1994)). In assessing the record to determine if such issues exist, all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Heilweil v. Mount Sinai Hosp.,* 32 F.3d 718, 721 (2d Cir.1994). "Credibility determinations, the weighing of the evidence,

and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. When reasonable persons, applying the proper legal standards, could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury. *Sologub v. City of New York,* 202 F.3d 175, 178 (2d Cir.2000).

Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505, and present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.,* 230 F.3d 34, 38 (2d Cir.2000). A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Lipton v. The Nature Company,* 71 F.3d 464, 469 (2d Cir.1995) (quoting *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir.1986)). Additionally, a party may not rest on the "mere allegations or denials" contained in his pleadings. *Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir.1995). *See also Ying Jing Gan v. City of New York,* 996 F.2d 522, 532 (2d Cir.1993) (holding that party may not rely on conclusory statements or an argument that the affidavits in support of the motion for summary judgment are not credible).

### A. Count One: Americans with Disabilities Act

Count One of the plaintiff's complaint alleges that despite her disability, she was qualified to perform her position as a bank teller provided she was accommodated by being placed at a left-handed teller window. Am. Compl. [Dkt. No. 26] ¶ 44. The plaintiff alleges that she informed the defendants that she required a left-hand

teller window, but that on July 7, 2000, the D'Amico, the plaintiff's supervisor and branch manager, deliberately and knowingly refused to allow her to work at a left-handed window. *Id.* ¶¶ 46, 47. The plaintiff claims that the failure to accommodate her disability was a violation of the ADA, and that it caused her to suffer emotional and psychological stress, distress, anxiety, humiliation and self-defamation. *Id.* ¶ 49. The plaintiff also alleges that the failure to accommodate her resulted in the loss of wages and various other benefits, and the loss of the ability to enjoy life's pleasures and activities. *Id.* ¶¶ 50, 51. The defendants argue that the plaintiff does not fit within the definition of the term "disabled" within the meaning of the ADA, and that she is therefore ineligible for its protections. Mem. *in* Support of Mot. *for* Summ. J. [Dkt. No. 34] at 11.

A plaintiff alleging employment discrimination under the ADA bears the initial burden of establishing a prima facie case. *Ryan v. Grae & Rybicki, P.C.,* 135 F.3d 867, 869 (2d Cir.1998). The ADA requires "covered entities, including private employers, to provide 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship.'" *Toyota Motor Manufacturing, Kentucky, Inc., v. Williams,* 534 U.S. 184, 193, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). In order to demonstrate a prima facie case, a plaintiff must show that: 1) her employer is subject to the ADA; 2) she suffers from a disability within the meaning of the ADA; 3) she could perform the essential function of her job with or without reasonable accommodation; and 4) she was discharged because of her disability. *Giordano v. City of New York,* 274 F.3d 740, 747 (2d Cir.2001).

■ There is no dispute that the defendants were subject to the ADA, and the main question under this claim becomes whether the plaintiff's impairment qualifies as a disability under the statute. The Act defines a qualified individual as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12112(8). A disability is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

■ The Supreme Court has found that merely having an impairment does not make one disabled for purposes of the ADA. *Toyota Motor,* 534 U.S. at 195, 122 S.Ct. 681. Claimants also need to show that the impairment substantially limits a major life activity. *Id.* The court has held that "to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. The impairment must also be permanent or long term." *Id.* at 198, 122 S.Ct. 681. Disabilities are determined on a case by case basis. The extent of the person's limitation is measured in terms of the individual's own experience. *Id.*

In analyzing cases involving an impairment that limits a person's major life activity of performing manual tasks, the court has found that "the central inquiry must be whether the claimant is unable to perform a variety of tasks central to most people's daily lives, not whether the claimant is unable to perform the tasks associated with her specific job." *Id.* The

Supreme Court has also noted that occupation-specific tasks may have only limited relevance in this inquiry. *Id.*

Taking the facts in the light most favorable to the plaintiff, it could be found that the plaintiff suffered from and was diagnosed with a cervical/thoracic sprain and migraine headaches. Pl.'s Mem. in Opp'n to Mot. for Summ. J. [Dkt. No. 40] Ex. 9 at 5. After suffering for a period of time with continued symptoms shortly following her car accident, the plaintiff, with written authorization from her treating physician, was able to resume full-time work without restrictions in March of 2000. *Id.* Ex. 1 at 85. The plaintiff stated her injuries "had a profound effect on her lifestyle and on and [sic] substantially limited majoy [sic] life activities such as sports [volleyball] and household chores. The entire right hand side of her body was affected." Pl.'s Mem. in Opp'n to Mot. for Summ. J. [Dkt. No. 40]. In describing the limitations she faced as a result of her injuries, the plaintiff stated that she could no longer play volleyball for three hours every Monday night, had difficulty performing repetitive motions on the right side of her body, and could not lift more than 20 or 30 pounds without discomfort. *Id.* Ex. 1 at 182–83. The plaintiff did state, however, that she was able to attend to her own personal hygiene, including bathing, was able to perform household chores, was able to babysit for young children, and could shop and cook for her family. *Id.* at 183–84.

As a matter of law the court does not find that the limitations that the plaintiff faced as a result of her impairment fit within the definition of disability under the ADA. The Supreme Court has found that relevant to a disability inquiry is whether the plaintiff can tend to personal hygiene and carry out personal or household chores. *Toyota Motor*, 534 U.S. at 202, 122 S.Ct. 681. The plaintiff was able to perform all necessary household chores,

although perhaps not as easily as she once was able. Although she found she needed rest after periods of vacuuming, and had difficulty pulling in a line of laundry if it were coming from the right hand direction, when asked specifically if she was able to perform household chores, the plaintiff responded "Yes." Pl.'s Mem. in Opp'n to Mot. for Summ. J. [Dkt. No. 40] Ex. 1 at 184.

The Second Circuit has found that plaintiffs with far more debilitating impairments are not considered disabled under the ADA. In *Colwell v. Suffolk County Police Department*, 158 F.3d 635 (2d Cir. 1998), the Second Circuit found that three police officers with differing degrees of back and head injuries were not disabled under the ADA. In the case, one officer suffered from chronic lower back syndrome, which meant he could not stand in one spot for any period of time without feeling excruciating pain, had severe difficulty sleeping, could not lift "very heavy objects," could not drive for two, three or four hours without stopping, could not go shopping at the mall, or ski or golf. *Id.* A second officer suffered from chronic degenerative disk disease, could not bend over for long periods, could not do heavy lifting, could not rake, could not drive for long periods of time, could not sit in one position too long, and could not run. *Id.* at 639. A third officer, who suffered a cerebral hemorrhage, could not do physical work such as shoveling snow or heavy lifting, and frequently experienced a sensation as if he felt the onset of another hemorrhage if he were stressed or fearful. *Id.* Despite these impairments, the Second Circuit reversed a jury verdict, and found these officers not disabled under the ADA. The court reasoned that, "a plaintiff who showed that he had an impairment and that the impairment affected a major life activity would nonetheless be ineligible if the limitation of the major life activity was

not substantial." *Id.* at 641. The court noted that an ADA analysis should focus on whether an activity is a significant one within the ADA, and not merely an activity that is important to a particular plaintiff. *Id.* at 642. In this case, the plaintiff's impairment does not substantially impair one of life's major activities. The plaintiff has far less difficulties than did the police officers in *Colwell,* and therefore as a matter of law she cannot be found as disabled under the ADA.

Other circuits have also found that plaintiffs with substantially similar levels of impairment do not qualify as disabled for purposes of the ADA. In *Stein v. Ashcroft,* 284 F.3d 721 (7th Cir.2002), the Seventh Circuit held that a plaintiff who had chronic upper left extremity pain and "myofacial pain syndrome" did not qualify as disabled. The impairment caused the plaintiff to have difficult extending her left arm and lifting and carrying heavy objects. As the Seventh Circuit noted, the plaintiff's inability "to lift and carry heavy boxes of files to the extent necessary to perform her duties outside the office does not rise to the level of a restriction on her ability to work in a broad class of jobs .... A plaintiff's inability to perform 'one narrow job for one employer' is insufficient to establish a disability." *Stein v. Ashcroft,* 284 F.3d 721, 725 (7th Cir.2002).

The Ninth Circuit has also rejected a claim under the ADA claim finding that a former newspaper employee's inability to engage in continuous keyboarding or handwriting did not constitute a "substantial limitation" on performing manual tasks. *Thornton v. McClatchy Newspapers, Inc.,* 292 F.3d 1045, 1046 (9th Cir.2002). The court found that being limited or hampered in one's ability to perform manual tasks was insufficient under the ADA. *Id.* The *Thornton* court found this, even if, in the context of that person's job, that limitation would be considered crucial. *Id.*

"We concede that Thornton's life has been diminished by her inability to engage in continuous keyboarding or handwriting. But diminished is different from 'substantially limited,' at least as understood by Congress and the Supreme Court." *Id.*

As the Supreme Court noted, "the manual tasks unique to any particular job are not necessarily important parts of most people's lives." *Toyota Motor,* 534 U.S. at 201, 122 S.Ct. 681. Being unable to do job related tasks is insufficient proof of a disability. *Id.* Given this definition of the term "disabled," this court does not find that the plaintiff's impairment is covered under the ADA. The defendants' motion to dismiss Count One of the plaintiff's complaint is therefore granted.

B. *Count Two: ADA "Perceived As" Claim*

■■■ The plaintiff's second claim asserts that, even if the plaintiff was not disabled, the defendants viewed the plaintiff as disabled and discriminated against her as a result. To be perceived as having a disability " 'turns on the employer's perception of the employee' and is therefore 'a question of intent, not whether the employee has a disability.' " *Colwell,* 158 F.3d at 646 (quoting *Francis v. City of Meriden,* 129 F.3d 281 (2d Cir.1997)). Significantly, it is not enough that the employer regarded the plaintiff as disabled, but rather the employer must see the individual as disabled *"within the meaning of the ADA." Colwell,* 158 F.3d at 646 (emphasis original). In other words, this plaintiff must demonstrate that these defendants viewed her as having an impairment that substantially limited a major life activity. *Id.*

■■■ The mere fact that the defendants assigned the plaintiff to a left hand teller window does not permit the inference that the plaintiff was regarded as substantially

limited in her ability to do work. *Id.* ("Assignment to light duty status ... does not support the inference that the County viewed them as disabled; the fact that light duty assignments were prolonged can make no difference. Continuous assignment of a policeman to non-confrontational positions does not permit the inference that the officers were regarded as substantially limited in their ability to do work.") "[T]he plaintiff must allege that the employer believed, however erroneously, that the plaintiff suffered from an 'impairment' that, if it truly existed, would be covered under the statutes, and that the employer discriminated against the plaintiff on that basis." *Francis v. City of Meriden,* 129 F.3d 281, 285 (2d Cir.1997).

This plaintiff has not demonstrated that the defendants perceived that she was disabled under the ADA. The plaintiff argues that, by providing her with a left-handed teller window from February 2000 through until July 2000, that this accommodation evidences that the defendants perceived her as disabled and unable to work at a right-handed teller window. Pl.'s Mem. in Opp'n. to Mot. for Summ. J. [Dkt. No. 40]. However, in other, perceived-as cases, defendants typically restrict a plaintiff from performing his or her job because those defendants believe that such restrictions were necessary to accommodate what those defendants thought were disabilities. *See Francis,* 129 F.3d at 284. By contrast, there is nothing in the record to support a finding that the defendants in this case perceived the plaintiff as disabled.

In an similar analysis, the Second Circuit found that an employer could not have been found to have perceived an employee as being disabled when that employer was willing to recommend the employee for future employment. "[T]he fact that G & R was willing to provide Ryan with a good employment recommendation suggests that it did not perceive her as being unable

to perform related jobs." *Ryan,* 135 F.3d at 872. Likewise, in this case, the defendants' allegedly discriminatory conduct is the result of having asked the plaintiff to have performed a non-disabled type of job. Their request was one which evidences that they believed her to be capable of performing at a right-handed teller window. There is nothing in the record that suggests the defendants thought of the plaintiff as having been limited in life's major activities, or that they denied her opportunities based on this perceived limitation. There is no evidence in the record that suggests that the defendants perceived the plaintiff as unable to work in a broad class of jobs. *Giordano v. City of New York,* 274 F.3d 740, 750 (2d Cir.2001). Summary judgement is therefore granted on this claim.

### C. *Count Three: ADA Retaliation Claim*

The plaintiff's complaint also alleges that the defendants violated the ADA when they retaliated against her for "protecting her health and standing up for her right to an accommodation under the ADA." Pl.'s Compl. [Dkt. No. 26] ¶ 68.

The elements of a retaliation claim under the ADA are "(i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." *Weixel v. Board of Educ. of City of New York,* 287 F.3d 138, 148–49 (2d Cir.2002) (citing *Weissman v. Dawn Joy Fashions, Inc.,* 214 F.3d 224, 234 (2d Cir.2000)). A plaintiff may prevail on a claim for retaliation even when the underlying conduct of the employer was not in fact unlawful " 'so long as he can establish that he possessed

a good faith, reasonable belief that the underlying challenged actions of the employer violated [the] law.' " *Treglia v. Town of Manlius,* 313 F.3d 713, 719 (2d Cir.2002). Claims for retaliation are analyzed under the same burden-shifting framework established for Title VII cases. *Id.*

■ In this case, the plaintiff claims that the defendants retaliated against her for "standing up for her right for an accommodation under the ADA." Am. Comp. [Dkt. No.] ¶ 68. The defendants argue, however, that the plaintiff never informed the defendants that working at a right-handed teller window had caused her discomfort. Mem. in Supp. of Mot. for Summ. J. [Dkt. No. 34] at 12. The defendants also argue that they were unaware of the need for any type of accommodations since the plaintiff's doctor had cleared her to return to work without any restrictions in March of 2000. *Id.* The defendants argue that the plaintiff cannot demonstrate the first and second prongs of the retaliation analysis: that she was engaged in a protected activity or that the defendants knew that she was engaged in a protected activity.

The plaintiff has established the third and fourth prongs of a retaliation claim. The firing of the plaintiff on the following Monday, July 10, 2000, establishes the third prong of the retaliation analysis, that the employer took an adverse employment action. An adverse employment action has been defined broadly to include "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand." *Morris v. Lindau,* 196 F.3d 102, 110 (2d Cir.1999). The plaintiff's firing is clearly within this definition. The fourth prong of the retaliation analysis is also satisfied, that a causal connection exists between the adverse action and protected activity. The Second Circuit has found that " '[t]he causal connection needed for proof of a retalia-

tion claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.' " *Lovejoy–Wilson v. NOCO Motor Fuel, Inc.,* 263 F.3d 208, 224 (2d Cir.2001). In this instance, the protected activity took place on a Friday and the adverse action took place on the following Monday. The close timing of the adverse action is sufficient to satisfy the fourth prong of the analysis.

The plaintiff's evidence is exceptionally thin with regard to the first prong of a claim of retaliation under the ADA. In her deposition, the plaintiff described the events of the morning of July 7 which lead to her leaving work early.

> [T]he head teller wanted me to move from my assigned window to work on a right-handed window. And I told her I said, Linda, I can't do it because of my injuries from my accident. So I went to speak with Lillian in her office before the meeting and I asked her if she knew Linda wanted me to switch windows. And at that time she said she wasn't aware of it and that she would talk to Linda about it... She says, Why do you have to go to the left-handed window? And I said to her, Because of my injuries. I said, Using the left side causes me pain and discomfort and I go into full blown migraine headaches. She says, Well, what are you anyway, right handed or left-handed? I said I'm left handed. And I said I'm able to carry out my duties as a teller working on the left-handed window without any problems. She said, I'm going to have to think about it. Maybe some other time. But for now I don't want to hear another thing about it, so, you know, everybody just shut up about this and she walked away from behind the counter and went back to her office.

Def.'s Local 9(c) Statement [Dkt. No. 35] Ex A. at 33. While this evidence is thin, it is sufficient to raise an issue of fact as to the first prong of a retaliation claim. Taking the facts in the light most favorable to the plaintiff, her July 7, 2000 conversation with D'Amico demonstrates that the plaintiff thought she was requesting an accommodation under the ADA. Section 12203(b) of the ADA, provides that "[i]t shall be unlawful to coerce, intimidate, threaten or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed ... any right granted or protected by this chapter." Several courts have held that a non-disabled employee is nonetheless protected against retaliation if the employee made a good faith request for a reasonable accommodation. *Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224 (2d Cir.2000); *Conley v. United Parcel Service*, 88 F.Supp.2d 16, 20 (E.D.N.Y.,2000).

■ The plaintiff's claim fails, however, because she has failed to demonstrate the second prong of the analysis: that the defendants knew she was participating in protected activity. Other than the exchange with D'Amico on July 7, 2000, the plaintiff provides little evidence to establish that the defendants were aware of her desire to be accommodated at a left-hand teller window. She stated that her medical condition came up in conversations several times with other employees between her return to work and the day she was fired. Pl.'s Mem. in Opp'n to Mot. for Summ. J. [Dkt. No. 40] Ex. 1 at 92. For example, people asked, "how I was feeling, how I was doing and stuff." *Id.* Yet, the conversations themselves were admitted by the plaintiff to be the sort that were "of general pleasantries" and she could not specify who asked her these questions or on how many occasions these conversations took place. *Id.* There are no other examples which the plaintiff brings forward to evidence that after February of 2000 the defendants knew of her desire to be accommodated. "A defendant cannot be held liable under the ADA unless it had information at the time of its pertinent decisions that would have permitted a reasonable employer to conclude that the plaintiff was, in fact, disabled." *Bartlett v. N.Y. State Board of Law Examiners*, 226 F.3d 69, 85–86 (2d Cir.2000).

Although the defendants in this case knew that the plaintiff had been injured in a car accident, and that some accommodation was necessary during her healing process, there is little to no evidence presented that suggests that the defendants believed the plaintiff's injury to be ongoing. The evidence that the plaintiff presents to show the defendants knew her injury was ongoing is limited to her own deposition testimony. The plaintiff testified in her deposition that she was asked three to four times to work at a right hand window between February 11, 2000 and July 7, 2000. Pl.'s Mem. in Opp'n to Mot. for Summ. J. [Dkt. No. 40] Ex. A at 86–9. When asked to work at the window, the plaintiff "told [Linda] I couldn't go over to the right-handed window and that this was my assigned window." *Id.* at 87. When asked whether she gave any other reason as to why she couldn't change windows, the plaintiff responded "[y]es. She was also aware that because of my accident I had problems with the right side of my body and it was difficult for me to work on the right side." *Id.* The plaintiff stated that "I would tell her that I was at my assigned seat and that working on the right-handed window made it very difficult for me. It caused me too much pain and discomfort." *Id.* This, the plaintiff argues, is sufficient evidence to demonstrate that the defendants knew her injury was ongoing. In fact, however, the plaintiff's doctor had cleared the plaintiff to return to full time employment with no restrictions in March. *Id.*

at 85. Indeed, she provided to defendants a letter from her doctor stating "Sharon has shown improvement. Please adhere to last note dated 2/7/00 though 3/1/00–then she may resume unlimited activity at any work station." Def.'s Local 9(c) 1 Statement of Undisputed Fact [Dkt. No. 35] Ex. I. Although the plaintiff claims that she had occasional conversations with other employees about her health, she admitted that these conversations could be characterized as "general pleasantries," and could not specify if they took place 2, 10, or 15 times. Def's Local 9(c) Statement [Dkt. No. 35] Ex. 1 at 92.

Unlike other retaliation cases, where the plaintiff's participation in a protected activity was clear, such as the filing of a grievance with the EEOC, the plaintiff has not offered evidence sufficient to create a material issue of fact that the defendants had any sort of notice that the plaintiff was seeking an accommodation or participating in a protected activity. The defendants cannot be liable for their failure to intuit the need to accommodate the plaintiff. The defendants cannot be said to have retaliated against the plaintiff for engaging in protected activity, when the defendants had no notice that she sought an accommodation under the ADA. As plaintiff has failed to establish a retaliation claim under the ADA, the defendant's motion for summary judgment is therefore granted on this claim.

 Alternatively, if the plaintiff were to have established a prima facie case of retaliation, her claim for retaliation would still fail. After a plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the firing of the plaintiff. *Treglia,* 313 F.3d at 721. The defendants in this case have offered legitimate, non-retaliatory reasons for the adverse employment action. The defendants state that the plaintiff was terminated be-cause she abandoned her job on Friday July 7. Local 9(c) Statement ¶ 29. Once the defendants have met this burden, the plaintiff "must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation." *Treglia,* 313 F.3d at 721 (citations omitted). However, "a reason cannot be proved to be a 'pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (citation omitted) (discussing the burden in a Title VII case); *see also Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 146, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (holding that the fact-finder may infer discrimination in a Title VII case from the falsity of the employer's explanation). In the summary judgment context, the plaintiff must "establish a genuine issue of material fact either through direct, statistical or circumstantial evidence as to whether the employer's reason for discharging her is false and as to whether it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision." *Gallo v. Prudential Residential Services Ltd., Partnership,* 22 F.3d 1219, 1225 (2d Cir.1994).

In this context, the only evidence that the plaintiff has presented as to whether the nondiscriminatory reason is a pretext is that the timing and circumstances of the firing indicate that the defendants did not want to accommodate the plaintiff. The plaintiff has not presented evidence that the defendants knew or perceived her as disabled, that the defendants' reason for the adverse employment actions was false, or that discrimination was the real reason. *St. Mary's Honor Ctr.,* 509 U.S. at 515, 113 S.Ct. 2742. Therefore, the plaintiff's claim would fail for her failure to rebut the

defendants' legitimate non-discriminatory reason for the adverse employment action.

### D. *State Law Claims*

The plaintiff also raises several state law claims. Under 28 U.S.C. § 1367(c)(3), "[t]he district courts may decline to exercise supplemental jurisdiction over a [state law] claim ... if ... the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

While dismissal of the state claims is not absolutely mandatory, *Rosado v. Wyman*, 397 U.S. 397, 403–05, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988), the basis for retaining jurisdiction is weak when the federal claims are dismissed before trial. *Gibbs*, 383 U.S. at 726, 86 S.Ct. 1130. When "all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon*, 484 U.S. at 350 n. 7, 108 S.Ct. 614. *See also DiLaura v. Power Authority of New York*, 982 F.2d 73, 80 (2d Cir.1992); *Baylis v. Marriott Corp.*, 843 F.2d 658, 664–65 (2d Cir.1988); *Indep. Bankers Ass'n v. Marine Midland Bank*, 757 F.2d 453, 464 (2d Cir.1985).

Because this court has granted summary judgment with respect to the plaintiff's ADA claims, it will decline to exercise pendent jurisdiction over all of the plaintiff's remaining state law claim.

### IV. CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss [Dkt. No. 33] is GRANTED. The clerk is ordered to close the case.

**SO ORDERED**.